E. G. FRAZER

*v.*

ARTHUR T. HOWE *et al.*

*Filed at Ottawa May 10, 1883.*

1. PRACTICE—*withdrawing evidence.* The practice of withdrawing the evidence from the jury, although looked on with disfavor, is nevertheless admissible in cases where there is no evidence to support some one essential allegation, and without proof of which no recovery can be had.

2. SAME—*office and effect of motion to exclude all the evidence.* Motions to exclude evidence, and to instruct the jury to find for the defendant for the want of proof of a material fact essential to a recovery, are in the nature of demurrers to evidence, and hence they admit not only all that the testimony proves, but all that it tends to prove.

3. If there is no evidence before the jury on a material issue, in favor of the party holding the affirmative of that issue, on which the jury can, in the eye of the law, reasonably find in his favor, the court may exclude the evidence, or direct the jury to find against the party so holding the affirmative; but when there is such evidence before the jury, it must be left to them to determine its weight and effect.

4. It is not within the province of the court, on such a motion, to weigh the evidence and ascertain where the preponderance is. The function of the

## Syllabus.

court is limited strictly to determining whether there is or is not evidence legally tending to prove the fact affirmed, leaving out of view the effect of all modifying or countervailing evidence.

5. A question of fact, as settled by the preponderance of the evidence, can not be determined by the court on objection to the introduction of evidence, or on motion to exclude evidence.

6. STATUTE OF FRAUDS—*of the writing required.* The writing, to meet the requirement of the Statute of Frauds, need not give all the details of the contract, but it must express the substance of the contract with reasonable certainty, either by its own terms or by reference to some other agreement or matter from which it can be ascertained with like reasonable certainty. The contract can not rest partly in writing and partly in parol.

7. Where letters are offered to prove a contract not to be performed within a year, which fail to show an unqualified agreement between the parties, both in respect of the quantity of goods to be delivered and the price to be paid for them, and the Statute of Frauds is relied on, there will be no error in refusing them in evidence to show a contract evidenced in writing.

8. SAME—*recovery under quantum meruit.* Where a party, under a verbal contract, is to introduce a certain brand of lime within a certain territory, and work up a trade in the same, and sell no other kind of lime for the period of five years, in which period he is to devote all the time and means reasonably necessary to introduce such lime to the public, for which he is to have the exclusive right to sell such lime within such territory, and receive the same at reduced rates, and under such contract he expends large sums of money, and bestows much labor in successfully working up an extensive trade, and the other party, after such trade is so established, refuses to comply with his part of the contract, and sets up the Statute of Frauds in avoidance thereof: *Held,* that the party first named will be entitled, under *quantum meruit,* to recover the amount so expended by him in working up such trade, and the value of his time and services, and that of his employés, in effecting the object of the contract, and evidence of the parol contract is admissible in a suit to recover the same.

9. PARTNERSHIP—*liability of incoming member for prior debts.* Where the widow of a deceased partner comes into the firm of which her husband was a partner, intending that there shall be no change in the business operations of the firm, the conclusion is irresistible that she intends to assume the same burdens and share the same benefits in the firm that her husband would, if living, and so necessarily take his place in all contracts whereby he was bound. So, if the firm, after she comes into the same, continues to execute a contract made before, whereby she derives benefit, and the firm afterward repudiates the contract, under the Statute of Frauds, she will be liable with the other partners, under a *quantum meruit,* to the other party to the contract for his services and expenditures under the same before its repudiation.

APPEAL from the Appellate Court for the First District; —heard in that court on appeal from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding.

Arthur T. Howe, James B. Ormsby, Mary A. Bovee, and Frederick A. Heath, partners under the firm name "Marble-head Lime Company," brought an action of assumpsit, in the Superior Court of Cook county, against E. G. Frazer, for certain quantities of lime which they had sold and delivered to him. Frazer, among others, filed the following pleas:

"And now comes the defendant, and by leave of the court files this his second fifth amended plea of set-off in this behalf in the above entitled cause, and says that the plaintiffs ought not to have and maintain their aforesaid action against this defendant, because he says the goods, wares and merchandize, to-wit, Marblehead lime, to recover for which the plaintiffs herein have brought this suit, was furnished and delivered to this defendant by the plaintiffs in pursuance of the contract hereinafter mentioned, and that the plaintiffs were, before and at the time of the beginning of this suit, and still are, indebted to this defendant in the sum of, to-wit, $10,000, for damages sustained by this defendant, arising out of the failure on the part of the plaintiffs to perform the said contract, to-wit, on, to-wit, the 8th day of March, 1879. The plaintiffs, Arthur T. Howe, James B. Ormsby, Frederick A. Heath, and one Halsey A. Bovee, doing business under the name of the 'Marblehead Lime Company,' were operating a number of lime kilns near Quincy, Illinois, and manufacturing a superior quality of lime, sold in the market under the brand of 'Marblehead lime,' of which said lime they claimed to be the sole manufacturers, and of which said brand the said Marblehead Lime Company claimed to be the exclusive owner, and the said parties last named, at the time last aforesaid, in consideration that this defendant, who for a number of years previous to that had been engaged in selling

lime in the territory hereinafter mentioned, should, at his own expense, undertake to introduce said Marblehead lime, and work up a trade or demand therefor in the following territory, to-wit, all of the territory lying north of the Chicago, Burlington and Quincy railroad, or the railroad commonly called the Chicago, Burlington and Quincy railroad, in the State of Iowa; also, to-wit, the north-western part of the State of Illinois, as well as various Mississippi river points, but particularly the territory, to-wit, the territory lying along the Chicago, Rock Island and Pacific railroad, its branches and tributaries, in the State of Iowa, agreed to furnish this defendant all of the lime of the above mentioned brand that he, this defendant, might need to supply his trade in said territory for the period of, to-wit, five years, at the following prices at the kilns, to-wit:   Sixty (60) cents per barrel in barrel, and forty (40) cents per barrel in bulk, and further agreed, for the consideration aforesaid, that this defendant should have the exclusive right of handling and selling said lime throughout said territory for said period of five years; that immediately after the making of said agreement this defendant entered upon the performance of the same; that afterwards, to-wit, on the 9th day of August, 1879, the plaintiffs herein, doing business under the name of the 'Marblehead Lime Company,' became possessed of all the lime kilns, quarries, business, good will, and all other property rights and privileges belonging to said first named Marblehead Lime Company, and succeeded to all the interest that said first named Marblehead Lime Company had in the contract aforesaid, and in consideration thereof, on, to-wit, the day last aforesaid, assumed and adopted all of the obligations thereof, and in consideration that this defendant should continue to perform his part of said contract, and of the advantages to result therefrom to the plaintiffs.   The plaintiffs herein, on, to-wit, the date last aforesaid, undertook and agreed with this defendant to carry out and perform said contract, and

all of the provisions thereof, in place and stead of the first named Marblehead Lime Company.

"And this defendant avers, that he, the defendant, did at his own expense continue to perform his part of said contract after the plaintiff had adopted the same as aforesaid, and by great labor and the necessary expenditure of a large sum of money, to-wit, the sum of $10,000, this defendant performed his part of said contract, except in so far as he was prevented by the acts of the plaintiffs, hereinafter mentioned; that by reason of this defendant's continuing to carry out his part of said contract as aforesaid, the plaintiffs derived great advantage and profit from said contract, to-wit, the sum of $12,-000, but that afterwards, to-wit, on the 1st day of December, 1880, the plaintiffs failed and refused to any longer perform their part of said contract, which said refusal and failure has continued hitherto, by reason of which failure this defendant was deprived of the exclusive right of handling and selling said lime in said territory for the unexpired term of said contract, to-wit, three years, which exclusive privilege was worth, to-wit, $10,000, and was unable to supply the demand of his said trade, to-wit, 40,000 barrels per annum, with said Marblehead lime, for the period of three years, and lost many of his customers, and lost the profits that would accrue to him under said contract, and was, by reason of the premises, unable to any longer purchase said lime at the price mentioned in said contract, and was otherwise greatly injured, to the damage of this defendant of $10,000; that said last named sum of money was and is due from the plaintiffs to this defendant, and that the same exceeds the damages sustained by reason of the non-performance by this defendant of the several supposed promises mentioned in said declaration, and out of which said sum of money this defendant is ready and willing, and here offers, to set off and allow the plaintiffs full amount of said damages; and this the defendant is ready to verify, wherefore this defendant prays

judgment for the balance of said $10,000, to-wit, the sum of $9640, and also whether the said plaintiffs ought further to have and maintain their aforesaid action.

"And the said defendant, for a further plea in this behalf, now filed by leave of court, says that the plaintiffs ought not to have and maintain their aforesaid action, because he says that the plaintiffs were, before and at the time of the commencement of this suit, and still are, indebted to him, the defendant, in the sum of $10,000, for goods, chattels and effects before that time sold and delivered by the defendant to the plaintiffs at their request; and in the like sum for goods, chattels and effects before that time bargained and sold by the defendant to the plaintiffs at their request; and in the like sum for work and services before that time done and bestowed by the defendant for the plaintiffs at their request; and in the like sum for money before that time lent by the defendant to the plaintiffs at their request; and in the like sum for money before that time paid and expended by the defendant for the use of the plaintiffs at their request; and in the like sum for money before that time received by the plaintiffs for the use of the defendant; and in the like sum for interest on divers sums of money before that time foreborne by the defendant to plaintiffs at their request, for divers spaces of time before then elapsed; and in the like sum for money found to be due from the plaintiffs to the defendant on an account then and there stated between them; and being so indebted, the plaintiffs then and there promised the defendant to pay him, on request, the several sums of money so due to him as aforesaid, which said sums of money so due from the plaintiffs to the defendant as aforesaid, exceed the damages sustained by the plaintiffs by reason of the non-performance by the defendant of the several supposed promises in the said declaration mentioned, and out of which said sums of money the defendant is ready and willing, and hereby offers, to set off and allow to the plaintiffs the

full amount of the said damages; and this the defendant is ready to verify, wherefore he prays judgment if the plaintiffs ought to have their aforesaid action against him, etc."

The following replications were filed to these pleas:

"And the said plaintiffs, as to the said plea of the said defendant by him secondly above pleaded, (the order of pleas was afterwards changed, and by order of court above replication is to stand to special amended plea last filed,) say that the said plaintiffs, by reason of anything in said plea alleged, ought not to be debarred from having and maintaining their aforesaid action against the said defendant, because they say that the several supposed agreements and causes of set-off in said plea mentioned were not to be performed within the space of one year from the making thereof, and that no agreement in respect of or relating to the supposed causes of action in said plea, nor any memorandum or note thereof, wherein the consideration or considerations for said promises, or either of them, was or were stated or shown, was or is in writing, or was or is signed by the said plaintiffs, or either of them, or any other person by them thereunto lawfully authorized, according to the form of the statute in such case made and provided; and this the said plaintiffs are ready to verify, wherefore they pray judgment and the damages by them sustained on occasion of the non-performance of the several promises in said declaration, to be adjudged them.

"Now come the said plaintiffs, by Eric Winters, their attorney, and for further replication to the second plea and additional pleas filed herein by said defendant, say that they did not undertake or promise in manner and form as said defendant has above thereof complained against them, and of this they put themselves upon the country. And the said plaintiffs, for a further replication in this behalf, leave of court being first had and obtained as to the pleas of the defendant

by him above pleaded, say that they, the plaintiffs, by reason of anything in said pleas alleged, ought not to be barred from having their aforesaid action, because they say that they are not, nor ever were, jointly liable in respect of the several supposed causes of action in said pleas mentioned, or any or either of them, in manner and form as the defendant has above in that behalf alleged, and of this they put themselves upon the country."

The last replication was sworn to by three of the plaintiffs. *Similiter* as to the replication, in which plaintiffs went to the country, and the following rejoinder as to the other replication:

"And the defendant, as to the replications of the plaintiffs to the second or special plea of this defendant, says that the plaintiffs ought not, by reason of anything in that replication alleged, to have their aforesaid action against him, the defendant, because he says that notes and memoranda of each and every one of said several promises in said plea mentioned were in writing, and signed by the said plaintiffs, and this, the defendant prays, may be inquired of by the country."

And the *similiter* was added to this rejoinder.

There was a verdict and judgment for the plaintiffs for the amount of their claim. An appeal was taken to the Appellate Court for the First District, where the judgment of the Superior Court was affirmed, and defendant appealed from that judgment to this court.

The amount of plaintiffs' demand was admitted, and the sole controversy on the trial was upon the pleas of set-off. Numerous errors were assigned in the Appellate Court, and errors are here assigned on the record of the judgment of that court, sufficiently presenting the questions discussed in the opinion. Other matters material to an understanding of the case sufficiently appear in the opinion.

Mr. JOHN P. ALTGELD, for the appellant:

There were four elements in the contract, viz: The territory covered; second, the length of time the arrangement was to continue; third, the price of the lime; and fourth, the quantity of lime that would be required. Therefore, if the letters, taken together, cover all of these points, then the contract was not within the Statute of Frauds, and the court below erred in holding that there was no written contract proven. It is true they do not show an acceptance of all the foregoing provisions by appellant, but the acceptance of the terms by appellant need not be in writing, but may be proved by parol, as the statute only requires the contract or memorandum to be signed by the party to be charged. *Perkins* v. *Hadsell*, 50 Ill. 220; *Farwell* v. *Lowther*, 18 id. 255; *Esmay* v. *Gorton*, id. 483.

Letters written at any time before the commencement of the suit are admissible to show the original contract, and take the case out of the statute. Browne on the Statute of Frauds, sec. 352 a; Chitty on Contracts, (11th Am. ed.) 95; *Bill* v. *Boment*, 9 M. & W. 36.

Appellees, by performing the contract for a time in the same manner as the original company agreed to perform, adopted the company's contract, and became liable, the same as if it had been made with them directly. *Chicago and Alton R. R. Co.* v. *Chicago, Vermilion and Wilmington Coal Co.* 79 Ill. 121.

"A party who has paid money in fulfillment of a verbal contract, which the other refuses or becomes unable to carry out, may recover it in an action for money had and received. * * * In like manner, one who has rendered services in execution of a verbal contract, which, on account of the statute, can not be enforced against the other party, can recover the value of the services upon a *quantum meruit.*" Browne on the Statute of Frauds, sec. 118; 1 Chitty on Contracts, p. 422, (11th ed.) note; *Pierce* v. *Paine*, 28 Vt. 37;

*King* v. *Brown,* 2 Hill, 487; *Rosepaugh* v. *Vredenberg,* 16 Hun, 60; *Kidder* v. *Hunt,* 1 Pick. 328; *Lane* v. *Shackford,* 5 N. H. 133; *Williams* v. *Bemis,* 108 Mass. 91; *Ray* v. *Young,* 13 Texas, 550; *Welch* v. *Lawson,* 32 Miss. 178; *Knowlman* v. *Bluett,* 9 L. R. Exch. 307.

Mr. ERIC WINTERS, and Mr. W. J. LAMB, for the appellees:

The court properly took all the defendant's evidence from the jury. The judge is no longer required to submit a case to the jury merely because some evidence has been introduced by the party having the burden of proof, unless the evidence "be of such a character that it would warrant the jury to proceed in finding a verdict in favor of the party introducing it." *Jewell* v. *Parr,* 13 C. B. 916, (E. C. L. R. 76); *Commonwealth* v. *Clark,* 4 Otto, 284.

The pretended contract being by letter, the court properly construed the letters, and did not submit them to the jury. It would have been error to have done so. *Vanvalkenberg* v. *Rogers,* 18 Mich. 180; *Ramsey* v. *Gere,* 5 Wis. 70; *United States* v. *Shaw,* 1 Cliff. 317; *Luckhart* v. *Ogden,* 30 Cal. 547; *Auffenordt* v. *Stevens,* 46 Conn. 411.

As to requisites of a contract by letters, see *Northwestern Co.* v. *Meade,* 21 Wis. 474; *Hutchison* v. *Blakeman,* 3 Metc. (Ky.) 80; *Firth* v. *Lawrence,* 1 Paige, 431; *Fenno* v. *Weston,* 31 Vt. 345; *Cornwell* v. *Krengel,* 41 Ill. 364; *Berland* v. *Guffey,* 1 Grant, (Pa.) 494; *McClay* v. *Harvey,* 90 Ill. 525.

As to variance in acceptance of proposal: Frye on Specific Performance, secs. 167, 170; *Routledge* v. *Grant,* 4 Bing. 653.

The travel which defendant did, and the moneys which he expended, were done and expended solely in his own business, and the customers which he obtained were his own, and not the plaintiffs', for which there can be no recovery under the common counts. *Ballard* v. *Bond,* 32 Vt. 355; *Pierce* v. *Paine,* 28 id. 34; *Dowling* v. *McKenney,* 124 Mass. 478;

*Allen* v. *Jarvis*, 20 Conn. 37; *Hosmer* v. *Wilson*, 7 Mich. 294; *Lockwood* v. *Barnes*, 3 Hill, 131.

To make an incoming partner liable, on the ground that he has ratified or adopted a prior contract, it must appear the act of adoption was done on his behalf. He must know of its existence before he can adopt it. 1 Lindley on Partnerships, 393, 392; *Goodenow* v. *Jones*, 75 Ill. 48.

To sustain a general count for work and labor, it must be bestowed for the benefit of the defendant, or, in other words, come to his use, or be appropriated to him with his consent. *Ottman* v. *San Francisco Co.* 20 Cal. 96; *Shrive* v. *Grimes*, 4 Littell, (Ky.) 221; *Force* v. *Haines*, 17 N. J. L. 385; *Cole* v. *Clark*, 3 Wis. 329; *Bender* v. *Bender*, 37 Pa. 419; *Smith* v. *Hatch*, 46 N. H. 146; *Richard* v. *Allen*, 17 Me. 296.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The practice of withdrawing the evidence from the jury, although looked upon with disfavor, (*Crowley* v. *Crowley*, 80 Ill. 469, and *Smith* v. *Gillett*, 50 id. 290,) is nevertheless admissible, and where there is any one essential allegation of a declaration which has no evidence to support it, we have held it is the duty of the court to exclude from the consideration of the jury all the evidence in the case, or to charge the jury that there is no evidence to support the essential allegation, and for want of such proof to find for the defendant. (*Poleman* v. *Johnson*, 84 Ill. 269.) Motions to exclude evidence, and motions to instruct the jury to find for the defendant in such cases, are in the nature of demurrers to evidence, and hence they admit not only all that the testimony proves, but all that it tends to prove. (*Pennsylvania Co.* v. *Conlan*, 101 Ill. 93.) If there is no evidence before the jury, on a material issue, in favor of the party holding the affirmative of that issue, on which the jury could, in the eye of the law, reasonably find in his favor, the court may exclude the evidence, or direct the jury to find against the

party so holding the affirmative; but when there is such evidence before the jury, it must be left to them to determine its weight and effect. (Best on Evidence, (1st Am. ed. from 6th Lon. ed.) sec. 82, p. 112.) It is not within the province of the judge, on such a motion, to weigh the evidence and ascertain where the preponderance is. This function is limited strictly to determining whether there is, or is not, evidence legally tending to prove the fact affirmed,— *i. e.*, evidence from which, if credited, it may reasonably be inferred, in legal contemplation, the fact affirmed exists, laying entirely out of view the effect of all modifying or countervailing evidence. *Hubner* v. *Feige*, 90 Ill. 208; *Crowe* v. *The People*, 92 id. 231; *Pennsylvania Co.* v. *Stoelke, Admr.* 104 id. 201.

Under this view of the law, we perceive no error in the ruling of the Superior Court that the letters were not sufficient evidence of a written contract, under the Statute of Frauds. The writing, to meet the requirement of the statute, need not give all the details, but it must express the substance of the contract with reasonable certainty, either by its own terms or by reference to some other agreement or matter from which it can be ascertained with like reasonable certainty. (*Atwood* v. *Cobb*, 16 Pick. 227; *Ives* v. *Hazard*, 4 R. I. 29; *Meadows* v. *Meadows*, 3 McCord, 458.) The contract can not rest partly in writing and partly in parol. (*Seymour* v. *Belding*, 83 Ill. 222; *Weaver* v. *Fries*, 85 id. 356.) The letters here fail to show an unqualified agreement between the parties, both in respect of the quantity of lime to be delivered and the price to be paid for it, which were indispensable elements in the contract. But we think the Superior Court erred in excluding all evidence of the parol contract, and in refusing to admit evidence of money expended and labor performed under it for the benefit of appellees.

There was evidence of a parol contract, competent for the consideration of the jury, made in March, 1879, between

Arthur T. Howe, James B. Ormsby, Halsey A. Bovee and Frederick A. Heath, then composing the firm of the Marblehead Lime Company, on the one side, and the appellant, E. G. Frazer, on the other side, whereby the Marblehead Lime Company agreed to sell and deliver to appellant all the lime he could sell in all that part of the State of Iowa north of the Chicago, Burlington and Quincy railroad, also in any territory in Illinois which he might work up which they had not already worked up, and also in any territory in Minnesota and Wisconsin which he might work up, for and during the term of five years then next ensuing, and they were to employ no other person to sell lime for them, and to sell to no other person, within this territory, for said term of five years. In consideration of this, appellant was, during the term, to devote himself, so far as reasonably necessary, to the business, buy and sell no other lime within that territory, and pay them, for lime in barrels, sixty cents per barrel, and for lime in bulk at the rate of twenty cents per barrel. There was some delay, at the first, in consequence of the difficulty of obtaining satisfactory freight rates; but the evidence tends to show this was but temporary, and that for a period of near eighteen months after March, 1879, both parties acted, in selling and delivering lime within the designated territory, under a recognized contract, which the evidence also fairly tends to show was that above stated. There was also evidence showing that the Marblehead Lime Company manufactured a superior quality of lime, known as "Marblehead lime;" that they claimed the exclusive right of using the brand of that name; that they were anxious to have their brand introduced throughout the State of Iowa, and their trade elsewhere increased, and that appellant was a dealer in lime, largely acquainted, and doing considerable business in the territory indicated in the contract, and also that he was a competent and successful dealer. The proof also showed that the Marblehead Lime Company, in Decem-

ber, 1880, sold their kilns and established business, or good will, to the "Marblehead Lime and Cement Company," and thereafter was unable to comply with its contract with appellant, and the Marblehead Lime and Cement Company refused to carry out the contract.

During the progress of the trial appellant offered to prove that after the making of the contract in March, 1879, he at once proceeded to introduce this lime, and gave away car loads of the lime, and spent, during the year, besides his services, several thousand dollars in expenses, and the like sum in 1880, besides the value of his services, in carrying out the contract. Appellant also offered to prove what he did, and what appellees did, under the contract; that he expended, during the years 1879 and 1880, upwards of $5000 in carrying out the contract; that about December 1, 1880, he had substantially introduced the Marblehead lime throughout the entire territory covered by the contract, and that the Marblehead lime trade was quite well established by him. Appellant also further offered to prove, when parties had once been induced to trade in that lime they would not purchase any other lime from appellant, and that he thereby lost many customers that he before had and otherwise would have had dealing in lime generally. He also offered to prove that when the Marblehead Lime Company sold out to the Marblehead Lime and Cement Company, they received $17,500 for their established trade, or good will, alone; that the trade worked up by appellant, under his contract, at the time of the sale constituted more than one-fourth of the entire trade, or good will, for which the Marblehead Lime Company received the said $17,500,—all of which offers, on objection being interposed by appellees, were rejected by the court, and the court ruled that the proposed evidence was inadmissible. Evidence was given tending to show that by December, 1880, appellant had succeeded in working up a trade in Marblehead lime in that part of Iowa north of the Chicago, Burlington

and Quincy railroad; that it requires both skill and the incurring of serious expense to work up such trade, amounting to several thousand dollars per annum, and that the exclusive privilege of selling Marblehead lime in that territory is worth from $3000 to $5000 per annum. The court, on motion of appellees' counsel, excluded all the evidence from the jury.

The general doctrine, as asserted in *Butcher's Steel Works* v. *Atkinson,* 68 Ill. 421, that where a party has had the benefit of the services of another, under a parol contract, to which he successfully pleads the Statute of Frauds, he is liable to that other for the value of his services under a *quantum meruit,* is conceded by appellees to be the law, but they contend that doctrine has no application here, because appellant's labors were bestowed and his money expended solely in his own business, and not in the business or for the benefit of the appellees. This wholly ignores the tendency of evidence that was given, and of evidence that was offered to be given but excluded by the court on appellees' motion. As has been seen, there was evidence before the jury tending to show that trade in appellees' lime could be built up in the territory designated in the contract, of great value, but that this necessitated the expenditure of money and the bestowal of labor, and appellant offered to prove that he did expend a large amount of money and bestow considerable labor in building up such trade, and by the 1st of December, 1880, he had thereby succeeded in so building it up that when the Marblehead Lime Company sold out to the Marblehead Lime and Cement Company, one-fourth of the $17,500 which it received for its established trade, or good will, was in consequence of the trade he had so built up in the territory designated in the contract, and that after appellant had induced customers to trade in Marblehead lime, they would not, afterwards, deal with him for other lime. Instead, therefore, of his money being expended and his labor bestowed for the

benefit of himself, the offer was to prove the direct reverse—that it was to his material loss, and to the great pecuniary benefit of appellees. The theory of the case proposed to be made out by appellant is, that the contract was of ultimate benefit to both himself and appellees, but that it required a present outlay of money and bestowal of labor which would not be compensated for at the time, but that the compensation would come in the latter years of the term embraced by the contract, as the result of a well established trade. By the refusal to perform the contract appellant has lost all the labor and outlay, and been deprived of the anticipated compensation, but that appellees, by their sale, have enjoyed all this. This is certainly not equitable, and there is authority fully sustaining appellant's right to recover to the extent appellees have derived benefit from his money and labor.

In *Williams* v. *Bemis*, 108 Mass. 91, the plaintiff agreed, orally, with one Towne, the defendant's testator, to cultivate Towne's land for two years for two-thirds of the crop for two years, the plaintiff to furnish one-half the seed and all the labor, and Towne all the manure. The work was done and seed furnished under the contract the first year, and at the expiration of the first year the crop of that year was divided according to the contract, the plaintiff taking two-thirds and Towne one-third thereof. Towne then refused to allow the plaintiff to plant the land the second year. The work done and seed furnished and used upon the land by the plaintiff during the first year was more than was necessary for the first year's crop, and of greater value than the plaintiff's share of the crop, and inured to the permanent benefit of the land and of the crop for the second year, as was understood and anticipated by the parties when the contract was entered into and the work was done and the seed used upon the land. It was held the plaintiff was entitled to maintain an action for work done and materials furnished in cultivating the land. The court, after some discussion of the general

principles applicable in such cases, proceed thus: "The defendant insists that the work was done by the plaintiff in the cultivation of crops, which were to be partly his own, and was not done upon the credit of Towne, or with any expectation of charging it against him. Such undoubtedly was the understanding of the parties originally. But as Towne saw fit to say that the special contract was not binding upon him, it can not be set up by his executor as binding upon the plaintiff. (*King* v. *Welcome*, 5 Gray, 41.) It can not be treated as a nullity for one purpose, and as a contract for another. It required two years for its completion, and both parties understood that there was to be no profit or advantage to the plaintiff except from the operation of both years taken together. A large part of the labor and expense incurred in the first year had no reference whatever to the operations and results of that year taken by itself, but were a preparation of the land for increased productiveness in the second year. The plaintiff must be considered as having, in that way, paid in advance, in part at least, for the privilege of using the land in the second year in the manner agreed upon. By the repudiation of the contract he has lost the privilege which he had so paid for. The consideration upon which he made that payment has failed by the willful act of the other party to the contract, and he is, therefore, entitled to recover what he has so paid."

In *Ray* v. *Young*, 13 Texas, 550, the plaintiff agreed to build certain sheds, etc., and to take care of the cattle of the defendant's intestate for five years, for which he was to receive one-fourth of the increase. Before the contract was executed, but after the plaintiff had progressed in the execution thereof on his side, the defendant's intestate died. The Statute of Frauds was interposed in a suit brought by plaintiff, but it was held plaintiff was entitled to recover under a *quantum meruit*. The court, among other things, said: "It is contended that, induced by the contract, the plaintiff

had been at the expense of building a residence and erecting pens, preparatory to taking charge of the stock of the intestate. * * * It would be iniquitous to rule that the plaintiff had no redress for injury and loss that the defendant's intestate had induced him to incur. If the provision of the Statute of Frauds cited is to have that effect, instead of its preventing fraud it will be making it the instrument and means of perpetrating fraud. We believe that the plaintiff is entitled to compensation for his labor so bestowed."

In *Welch* v. *Lawson*, 32 Miss. 170, the plaintiff had purchased, by parol, a tract of land of the defendant, and at the defendant's request had gone to the expense of moving his family on it, it being understood that the defendant would, at the earliest convenient time, make the deed. Afterwards, defendant repudiated the contract, and plaintiff was forced to remove. He recovered a judgment in the trial court for expense and loss thus occasioned, and this judgment was affirmed by the Supreme Court. It was said by the court, in delivering its opinion: "The case would fall under a familiar rule—that he had incurred expense and trouble at the request of the defendant—and a right to compensation would follow as a matter of course, not for the loss of the bargain, but for the loss actually sustained, or for the trouble and loss of time incurred. It is a salutary principle of law that every man is bound to the observance of good faith to the extent that he knows that he is trusted; and it is not necessary, to hold him liable, that he was not in a situation to be benefited,—he must act so as not to injure another by his conduct. The defendant knew the extent to which he was trusted, and had, by his own act, secured the confidence of the plaintiff. He could not be ignorant of the trouble and expense which would necessarily be incurred by the plaintiff if he reposed such confidence in the assurance of the defendant as one man may reasonably repose in another. Under such circumstances, while it is unquestionably true that no

action can be maintained, either to recover damages for the loss of the land, or bargain, or for a specific performance, yet to hold that the action can not be sustained to recover for the injury or loss already named, would be equivalent to saying that the subject was one in regard to which fraud or bad faith could not be practiced."

It is impossible to perceive any distinction, in principle, between these cases and the case here made, and proposed to be made, by appellant.

But conceding the accuracy and application of the principle of these cases, counsel for appellees nevertheless insist there is still another and insuperable reason why appellant can not recover here. It is shown that Halsey A. Bovee died late in the summer of 1879, and that Mary A. Bovee, his widow, did not become a member of the firm until January 1, 1880, and it is contended the death of Halsey A. Bovee was the dissolution of the old firm, and the admission of Mary A. Bovee as a member of the partnership was the formation of a new firm, and that she, in the absence of an express assumpsit, which it is claimed was not proved, can not be made liable for the debts of the old firm. The evidence tended to show that Mary A. Bovee simply took the place of her husband in the firm,—neither taking out nor putting in anything; that the business, with her express consent and approbation, was conducted just as if no change had ever been made in the firm.

While it is true that the incoming partner, in the case of the fluctuation of partners, or substitution of one partner for another, is not, in general, liable in respect of debts contracted by the firm previously to joining, yet there are exceptions to the rule, and it has been held, "that payment of interest of old debts, length of standing in the firm, knowledge of the state of the books, accompanied with benefit derived from the contracts on which they are founded, will be evidence from which a jury may infer the assent of the in-

coming partner to debts previously contracted by the firm."
(Collyer on Partnership, (Perkins' ed.) sec. 522.) Parsons,
in his work on Partnership, p. 435, says: "On the whole, we
should say that the law of contracts and the law of partner-
ship lead to the conclusion that the new partner is not bound
to the old creditors, unless on a promise to them for a con-
sideration, both of which might, of course, be indirect, and
implied by circumstances. Whether the new incoming part-
ner has thus assumed the old debts, is sometimes a difficult
question of mixed law and fact. It certainly may be implied
by circumstances, and what circumstances should, in any
one case, imply it, is a question partly for the court and
partly for a jury." And after giving illustrations, he adds:
"And in general, whatever might be the form or technical
effect of the contract, if, in substance, it amounted to an
agreement by the incoming partner to share in the debts due
from the firm, he would be held accordingly." It was said
by Lord ELDON, in *Ex parte Reele*, 6 Ves. Jr. 604, in speaking
of this question: "Slight circumstances might be sufficient,
where, in the original transaction, the party to be bound was
not a partner, but at the subsequent time had acquired all
the benefit as if he had been a partner in the original trans-
action, and it would not be unwholesome for a jury to infer
largely that that obligation clearly, according to conscience,
had been given upon an implied authority."

If, in fact, as there was evidence tending to prove, Mary
A. Bovee took the place of her deceased husband, Halsey A.
Bovee, in the firm, intending that there should be thereby no
change in the business and operations of the firm, the conclu-
sion would be irresistible that she intended to bear the same
burdens and share the same benefits in the firm that her hus-
band, Halsey A. Bovee, would, had he continued to live, and
so, necessarily, to take his place in all contracts whereby he
was bound. There is, moreover, a much stronger reason in
the present case why Mary A. Bovee should be liable as one

of the partners, under a *quantum meruit*, than exists in ordinary cases of substitution of partners, and assumption by incoming partners of previous firm liabilities.   The contract was in existence, and its performance continued from March, 1879, until some six or seven months after Mary A. Bovee became a member of the firm.   The firm that refused to perform it was the firm of which she was a member, and yet the sole benefits under the contract, amounting, as we have seen, according to the proof offered, to more than one-fourth of $17,500, was enjoyed by that firm.   She has enjoyed her *pro rata* part of the profit derived from appellant's compliance with his part of the contract, and ought, therefore, to be liable, under a *quantum meruit,* with her co-partners.

The objections that the contract was unilateral, and that no acceptance was sufficiently proved, go only to the weight of the evidence, and should, therefore, have been addressed to the jury, and not to the court.   There was evidence competent for the jury, tending to prove an undertaking on the part of the appellant to deal *exclusively* in appellees' lime within the territory designated in the contract, and there were circumstances in proof from which, if not overcome by other proof, it would be implied appellant was bound to devote such time as was reasonably necessary to the introduction of appellees' lime, and its sale, etc.   So, also, there was evidence tending to show, and which, if not overcome by other proof, did show, an acceptance of appellees' terms by appellant.   We need only repeat, the question of fact, as settled by the preponderance of the evidence, could not be determined by the court on objection to the introduction of evidence, and on motion to exclude evidence.

For the reasons expressed the judgment is reversed and the cause remanded.

*Judgment reversed.*