## George H. Henderson, Adm'r, v. Jacob E. Treadway.

1. WITNESSES — *When Incompetent as to Transactions with a Deceased Person.*—An alleged creditor of a deceased person, who has been appointed administrator of such person, under the statute authorizing the appointment of creditors under certain circumstances, is not competent to testify as to transactions between himself and the deceased in a proceeding for his removal commenced by an heir.

2. STATUTE OF FRAUDS—*Recovery for Property Delivered Under an Agreement Within—The Rule Stated.*—When a party to an agreement which is within the statute of frauds pays money, delivers property or renders services to the other, in performance of it and before notice of its repudiation by the other, the latter is liable, upon an implied promise for the money so had and received, on a *quantum meruit* or *valebant*, for the services or for the value of the property, if it has been converted or put out of the power of the party to return.

3. SAME—*Recovery for Property Delivered Under an Agreement Within—The Rule Applied.*—A had grass land rented of B, and asked B to give him permission to use the crop of grass for the current year after the expiration of his term, whereupon B offered to do so provided A would rent the land for another year, to commence at the expiration of the first year, and to this A agreed, but no lease was signed. Under this agreement, A left part of the grass grown during his first year on the land, and, after the commencement of the second year, B refused to allow him to use the grass and repudiated the contract. *Held*, that, although the agreement was voidable under the statute of frauds, that B was liable for the value of the grass left on the land, under its provisions.

Petition in Probate.—Appeal from the Circuit Court of Cass County; the Hon. Cyrus Epler, Judge, presiding. Heard in this court at the May term, 1896. Reversed and remanded. Opinion filed December 19, 1896.

R. W. Mills, attorney for appellant.

Morrison & Worthington, attorneys for appellee.

Mr. Justice Pleasants delivered the opinion of the Court.

Appellee filed a petition in the County Court for the removal of appellant from the office of administrator of the estate of James McHenry. It set forth that McHenry died May 20, 1895, seized of a large quantity of real estate, and possessed of notes and bank deposits amounting to $20,000 or more; that his sisters and their children, all adults and under no disability, were his only heirs; that more than sixty days after his death, appellant, upon a claim that he was a creditor of the estate to the amount of $250, applied for and obtained letters of administration, and that said claim had no validity in law or equity and was a fraud upon the court.

Appellant's answer denied all the charges of fraud, and asserted the validity of his claim as a creditor of the estate, upon an alleged state of facts in substance as follows :

In the spring of 1891, he rented from McHenry a 110 acre blue grass pasture for the season ending December 1st following, at $400, and placed his cattle thereon near the last of May. About the 8th of August, the stream on which he depended for water having gone dry, he took them off and thereafter during the term had none on. One Brown had rented from McHenry for the same term another pasture, of twenty-eight acres, just across the road from appellant's, but that also having become dry, took off his stock about the same time, and appellant bought from him the residue of his term. On October 19th, the drought still continuing, he went with his hired man, Graves, to see McHenry, and told him that he had bought Brown's grass,

and on account of the drought wanted to make an arrangement by which he could eat off the grass later in the winter, after December 1st, or in the spring, and that if he couldn't make it he would secure water by digging and put on cattle enough to eat it off during the term; that McHenry then proposed to him that if he would take both pastures for the next term, to end December 1, 1892, at the prices they were then rented for, he might use the old grass after December 1st, at any time he should see fit; that he then accepted the proposition and agreed to take both the pastures accordingly; that the old grass on them was worth $250 in April, 1892; that when the agreement was so made he had six or seven hundred steers, and but for that agreement could and would have secured water and put on stock enough to eat off the old grass during the current term, but relying on the agreement chose to leave it unfed until April 1, 1892, when he put his cattle on; that McHenry, within a day or two thereafter, turned them out, and although appellant was able and willing to pay for the pastures according to the agreement, refused to let him have them or to feed the old grass, and leased them to another party who went on and occupied them.

There is preserved in the record much evidence strongly tending to prove the substance of each of these allegations. Indeed it can hardly be claimed that any is denied except one, viz., that appellant had no stock on the pasture from August 8th, when he took them off, until after the expiration of the current term, December 1, 1891. Several witnesses did testify that they saw a few cattle on it from time to time until snow fell, but whose they did not know. That, however, was immaterial to the single issue on trial, which was whether appellant, when he applied for and obtained the letters of administration, was a creditor of the intestate; and the testimony of these witnesses would only bear upon the amount and not the fact of indebtedness, since it was shown beyond question and without contradiction, that on April 1, 1892, there was still old grass on the pasture of the value of $200. In any view of the case appellant had the

right to put cattle on in the fall of 1891. His doing so, if he did, would not affect his claim here in question.

Some slight attempt is also made to throw doubt upon the allegation that appellant told the deceased on October 19th, that unless he could arrange for the right to eat off the old grass after December 1st, he would secure water and put on cattle enough to do it that fall. That also is immaterial if the agreement for another term was actually made; and counsel admit that "the evidence shows that Henderson agreed to take the pasture for the year following December 1, 1891." He could not agree without the concurrence of McHenry, and that agreement, if observed, would have entitled him to put his stock on at any time during that term, without any reason previously expressed, or any further consent or affirmative act of his lessor. But McHenry must have understood that he took them off in August because of the drought and made the agreement, in part, to get the use of the old grass remaining uneaten when he could do so to advantage, though it might be after the expiration of the current term.

Graves was the only person present beside the parties when the alleged agreement was made. He testified in the matter before the County Court, but died before the hearing *de novo* in the Circuit Court. His testimony, however, was there reproduced through the county judge, Robertson, cashier of the bank which held McHenry's deposit, who had taken an active interest on the side of appellee, and appellant himself. As was to be expected, they differed in some unimportant points, and somewhat in language upon others, but according to the recollection of each Graves did testify that appellant told McHenry he had come to make arrangements for eating off the old grass in the winter or spring, and if he couldn't do it, would dig for water and put on stock enough to eat it before December 1st; that McHenry said if he would take both pastures for the year following December 1st, he might eat it at any time he pleased, so that he didn't injure the pasture, and appellant agreed to do it; and also that he, Graves, had the care of

appellant's stock, and that none of it was on the pasture after August 8th until spring.

Appellant submitted to the court below four propositions, to the effect that upon the hypothesis of the facts supported by the evidence, and which we think were therein fully and fairly stated, appellant was in law a creditor of the estate.

Whether the court found the facts or any of them against appellant, and the propositions therefore inapplicable, or was of opinion that upon the facts therein hypothetically stated the law was not as asked to be held, we are not advised, but they were all refused; and also, as consistency required, others which relate to the measure of the damages for which, upon the facts so stated, McHenry was claimed to have become liable. Exception to such refusal was taken.

Error is also assigned upon the refusal of the court to admit appellant to testify to his conversation with McHenry on October 19th, when it is claimed the alleged agreement was made. Here the adverse party was proceeding as heir of the intestate, which distinguishes it from the case cited. I. C. R. R. Co. v. Reardon, 157 Ill. 72 (378-9). Appellant was not within either of the exceptions made by the statute to the rule of the common law which excluded him. The ruling was therefore proper.

We are of opinion, however, that the refusal to hold the propositions submitted was error. It is to be inferred that in the view of the court appellant claimed to be a creditor for damages sustained by McHenry's breach of the agreement, and that such breach, if any there was, did not in law make him such because the agreement was within the statute of frauds. This was a misapprehension of the claim, which was not for a breach of that agreement, but of a distinct promise implied by the law from several circumstances, among which were the agreement and its repudiation by McHenry. According to statements by text writers quoted, supported by a long and concurrent line of decisions cited in the brief for appellant, it seems to be settled that where a party to an agreement which is within the statute of frauds pays money, delivers property or renders services to

the other, in performance of it and before notice of its repudiation by the other, the latter is liable upon an implied promise for the money so had and received or on a *quantum meruit* or *valebant* for the services or for the value of the property if it has been converted or put out of the power of the party to return. This has been clearly recognized and upheld in Illinois. Frazer v. Howe et al., 106 Ill. 563, and cases there cited. Both the rule and its justice are here fully conceded by counsel, but it is contended that this case is not within it because the property in question was not so delivered by appellant to McHenry.

On the 19th of October, 1891, that property confessedly belonged to appellant, and continued so to be until December 1st under his lease; and if the statement of facts as made in the propositions of law submitted was true, was still his when McHenry without previous notice to him of any intention to disregard the agreement of October 19, 1891, in April, 1892, turned his stock out, leased the pasture lot, at an advance of $40, upon the rent appellant was to pay, to another party and put him in possession. For that agreement was entirely lawful and valid, though voidable. McHenry was enabled to get and did get possession of the old grass only through its actual and intended operation, for otherwise appellant could and would have had it consumed by his stock before the expiration of his current term. In principle, therefore, his act was the same as would have been his retention of so much money paid by appellant in advance for rent under the agreement, and made him liable for the value of the property of which appellant was thereby deprived.

Had the court held the propositions submitted and yet found against appellant on the facts, the question here would be whether the finding was warranted by the evidence, but as we are not advised of the finding on the evidence, as to the facts, it is whether the propositions should have been refused, as they were.

We are of opinion that they should not, and for error in refusing them the judgment or order will be reversed and the matter remanded.