McFadden v. Sollitt.

## Timothy McFadden v. Ralph Sollitt et al.

1. PRACTICE—*When the Court May Direct a Verdict and When it May Not.*—When the evidence for the plaintiff, with all reasonable inferences deducible therefrom, is insufficient to support a verdict other than for the defendant, the court may direct such a verdict; but where reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions, the evidence must be submitted to the jury.

2. EMPLOYMENT—*Risks of, When Assumed, a Question for the Jury.*—Where a workman was directed by his employer to go under an overhanging bank of earth to assist in placing stone in a wall, he was not obliged to balance the degree of danger, and his knowledge of the attendant danger will not defeat his right of recovery, if, in obeying the directions of his employer, he acted with that degree of caution that an ordinarily prudent man would have exercised under the circumstances, and whether he did so act is a question for the jury.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. JESSE HOLDOM, Judge, presiding. Heard in this court at the October term, 1900. Reversed and remanded. Opinion filed March 25, 1901.

JAMES MAHER, attorney for appellant.

O. W. DYNES, attorney for appellees.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant was plaintiff and appellees defendants in the trial court. The plaintiff sued the defendants for damages alleged to have been occasioned by dirt or earth falling on

him from an overhanging bank, while engaged at work by the direction of defendants near to or under the bank.    The court, on motion of the defendants' attorney to take the case from the jury at the close of the plaintiff's evidence, refused so to do, but on a similar motion being made by the same attorney at the close of all the evidence, the court peremptorily instructed the jury to find the defendants not guilty, which the jury did, and judgment was entered on the verdict.

The question to be determined is, whether the court erred in taking the case from the jury.

The plaintiff testified that the defendants were engaged in the erection of a building on the corner of Thirteenth street and Wabash avenue, in the city of Chicago, and December 19, 1898, the cellar of the building had been excavated to the depth of between seven and eight feet, and that in length it was about one hundred feet and in width about fifty feet; that on that morning he had been at work excavating on the east side of the building for about half an hour, and in putting in stone on the east side, about two and one-half hours; that about eleven o'clock in the morning he, with two other men, went to the southwest corner of the building to put in the corner stone there; that in the morning of that day, when he went to work, there was a shed at the southwest corner, and where the shed was there was a jog of the bank which extended into the cellar about two feet, and which was about seven or eight feet in length, extending north from the south wall or bank; that after he got to the place in the morning, and while he was at work on the east side of the cellar, the shed at the southwest corner was taken down, and instead of cutting down the bank so as to be even with that part of it on the west side of the cellar, north of the jog, it was undermined by cutting or digging in from about four feet above the ground to a point below sufficiently far in to allow the placing of the corner stone; that Sumner Sollitt, one of the appellees, told him and the other men to get rollers from the street and roll the stone over the sidewalk into the cellar, which they did,

McFadden v. Sollitt.

when Sollitt told them to put it on the rollers again and move it under the bank, which they did; that the stone was about four and one-half to five feet long, four feet wide and twelve or fourteen inches thick; that the top of the bank was about seven feet high and overhung about three feet; that Sollitt told him and another man to get the jack, which they did, and plaintiff carried it over from the other side of the building on his back, and they put it behind the stone, when plaintiff drove a bar into the ground about eight inches from the bank, and north of the stone, and placed the foot of the jack against the bar, with its front against the north end of the stone, a colored man holding the bar. The jack lay flat on the ground, and the handle by which it was operated moved horizontally. Plaintiff was stooping down under the overhanging bank operating the jack and thus moving the stone south to its place. While the stone was being thus moved, Sollitt stood on it, plumbing it. The overhanging bank fell on plaintiff, throwing him forward with his face on the stone, while the stone was being moved, and injured him seriously. The plaintiff further testified that he had received no warning of any kind, and that his instructions were to constantly work at the jack from the time it was placed in position; that he was constantly engaged in so doing up to the time of the accident, and that he could not do the work without looking all the time at the jack. Such was substantially plaintiff's testimony. No other witness testified on behalf of the plaintiff, except a physician and surgeon, who testified only as to plaintiff's injuries.

Between the plaintiff's testimony and the evidence for the defendants there is a conflict as to whether or not it was the overhanging bank which fell. Daniel Curney, who was working near the plaintiff at the time of the accident, testified as follows:

Q. "Did that projecting piece fall down, or any part of it?" A. "No, sir; I don't *think* it did."

Sumner Sollitt, one of the appellees, was asked, and answered as follows:

Q.  " Did any part of the overhang fall ? "   A.   " I *think* not."

George Cassady, who was not present when the accident occurred, testified that the wall was straight on the west side, with the exception of five feet at the south end, and that extended under about two and one-half feet, where the shed was; that he saw the place where the dirt fell, but made no measurement; that it was or would be about nine feet from the corner.   On cross-examination he said he did not know how much dirt fell; that he didn't pay any attention to it.   The evidence of this witness that the place where the dirt fell on the plaintiff was nine feet from the corner, is utterly inconsistent with the uncontroverted fact that the falling dirt threw the plaintiff with his face forward on the stone—taken in connection with the testimony of Curney, witness for the defendants, that the stone was between five and six feet long, that the part of the bank which overhung extended about seven or eight feet from the south line or bank, that McFadden was stooping over and working at the jack, and that at the time of the accident the stone was within an inch of the south bank, and the further uncontroverted fact that the jack was placed at the north end of the stone.

Patrick Loftus, in his direct examination, testified that he was helping with the stone; that at the corner there was an overhang, which might be nine or ten feet in length, more or less, and that the bank caved right over where the jack was.   On his cross, he testified that McFadden was stooping over, working, and fell across the jack with his head and face down on the stone in front of the jack, and that the earth was on top of his head; also, that the jack is, probably, two feet six inches in length.

Gaughan, for defendants, was the only witness who testified positively that McFadden was not under the overhanging bank when the accident occurred.   He testified, on direct, that the length of the overhanging part was about four feet, although Sollitt himself testified that it was about six feet in length, and that the stone was five feet six inches

in length.   The evidence shows clearly that the- undermin-
ing was made for the purpose of putting the stone in place,
and  therefore the excavation would  have to  be at least as
long as the stone.   On cross-examination Gaughan testified
that the stone at the time of the accident was within about
one inch of its  place in the wall; that the end  of  the jack
was against the north end of  the  stone; that  plaintiff  fell
with his face and shoulders on the stone, and that there was
dirt across his shoulders, but whether there was any on his
head the witness could not tell.

The evidence for the defendants corroborates the plaint-
iff's evidence in important particulars.   Sumner Sollitt testi-
fied that he directed the putting in place of the stone, and
stood on it while it was being moved.   Gaughan, who was
helping put in the stone, testified that he heard no warning
given by Sollitt or any one.   Sollitt testified that they had
to keep all the banks safe.   Curney testified  that  where
there was a double bank with a  projecting  top, they gen-
erally braced them, and that the bank in question was  not
braced.   Loftus testified that there were  no  braces of any
kind at any place.

Counsel for appellees relies mainly on the proposition
that the danger was as apparent to the plaintiff as to the
defendants, and  that the  plaintiff assumed the risk.   In
support of this proposition he cites Simmons v. C. & T. Ry.
Co., 110 Ill. 340.   In that case the superintendent told  the
men (who were engaged in removing a  bank, and who, in-
stead of taking it down from the top, as the court held was
the proper and safe way, were undermining it) that the way
in which they were doing the work was dangerous, that
some one would  get hurt, and  that they should  not and
must not dig under it.   The foreman of the deceased also
warned the men, telling them not to get covered up, and
the deceased himself had said that he believed the bank was
dangerous.   There is no similarity between the facts in
that and in the present case.

Counsel also cites Legnard v. Lage, 57 Ill. App. 223, in
support of his contention.   In that case the plaintiff was

engaged in shoveling clay from the side of a bank twenty
feet high, when a large piece of clay fell from the bank and
injured him. It does not appear from the report whether
he was working in the way he was under the direction or
superintendence of any one. Numerous decisions of other
States, to which we do not think it necessary to refer, are
cited by counsel.

In Anderson Pressed Brick Co. v. Sobkowiak, 148 Ill.
573, the plaintiff was directed by his foreman to go under an
overhanging bank; he at first protested that the bank was·
in a dangerous condition, and that it might come down and
kill some one; but the foreman told him it was all right, and
he went under it. The bank fell on and seriously injured
him. It was contended on behalf of the defendant that the
danger being imminent and apparent to the plaintiff, he
assumed the risk and could not recover; but the court held
that the plaintiff having been directed by his foreman to go
under the bank, he was not obliged to balance the degree
of danger, and his knowledge of the attendant danger
would not defeat his right of recovery if, in obeying the
command, he acted with that degree of prudence that an
ordinarily prudent man would have exercised under the cir-
cumstances, and that whether or not he so acted was a ques-
tion for the jury. Ib. 583–4. To the same effect are Ill.
Steel Co. v. Schymanowski, 162 Ill. 447, 459–60; Offutt v.
Columbian Exposition, 175 Ib. 472, 478–9; and Ross v.
Shanley, 185 Ib. 390.

What was said by the court in Offutt v. Columbian Expo-
sition, viz., " under the evidence it can not be assumed, as
matter of law, that the danger was so imminent that no
man of ordinary prudence, having knowledge of it, would
incur it," is applicable to the present case. In the Offutt
case the plaintiff was injured by reason of the defective
hanging of a scaffold, which he hung himself under the
orders of his foreman. He thoroughly understood the
putting up and hanging of scaffolds, and objected that the
way in which the foreman directed him to hang the scaf-
fold was an unsafe way, but the foreman persisted in his

order, and the plaintiff obeyed and was injured; notwithstanding which the court held that the case was properly submitted to the jury.

Counsel cite authorities in support of the proposition that when the evidence for the plaintiff, with all reasonable inferences deducible therefrom, is insufficient to support a verdict other than for the defendant, the court may direct such a verdict. We have no fault to find with the authorities cited, but, as was said in Offutt v. Columbian Exposition, " The province of the jury must not be invaded (Frazer v. Howe, 106 Ill. 563), and where reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions, the evidence must be submitted to the jury." In the present case we can not say that different minds might not, from the evidence, reasonably reach different conclusions as to the liability of the defendants, and therefore can not hold, as matter of law, that there can be no recovery on the evidence.

The judgment will be reversed and the cause remanded.