## Marie E. Chadbourne v. The Illinois Central R. R. Co.

1.  PRACTICE—*Nature of a Motion to Instruct the Jury to Find for Defendant at the Close of Plaintiff's Evidence.*—A motion by defendant to instruct the jury to find for the defendant at the close of the plaintiff's evidence is in the nature of a demurrer to the evidence, and it admits not only all the evidence proves but all it tends to prove.

2.  NEGLIGENCE—*Dimly Lighted Station Platform.*—It is a question for the jury whether it is negligence on the part of a carrier to maintain station platforms so dimly lighted that a passenger is misled into stepping from a moving train, where the situation is illusive and the night dark.

Trespass on the Case, for personal injuries. Appeal from the Superior Court of Cook County; the Hon. FRANK BAKER, Judge presiding. Heard in this court at the March term, 1902. Reversed and remanded. Opinion filed December 11, 1902.

FRED W. BENTLEY, attorney for appellant; BENJAMIN F. METHVEN, of counsel.

W. A. HOWETT, attorney for appellee; J. G. DRENNAN, of counsel.

MR. JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment in favor of appellee, rendered in an action on the case by appellant for injuries alleged to have been occasioned by appellee's negligence. The court, on motion of the defendant's attorney, at the close of the plaintiff's evidence, instructed the jury to find the defendant not guilty. It is assigned as error that the court instructed the jury as stated, and also erred in the exclusion of evidence offered by the plaintiff.

Marie E. Chadbourne, the plaintiff, was the only witness as to the accident. She testified that after eight o'clock in the evening of December 1, 1899, she, in company with a Mr. Cole, took the defendant's train at Fiftieth street in the city of Chicago, to be carried to Randolph street, in said city; that after the train left Van Buren street the announcement was made, "Randolph street next stop;" that thereupon every one in the car in which she was, raised up, she with the others, and started toward the door; that the train had stopped, and she did not know it had started again; that on the way to the front door she felt no motion of the train; that when she reached the platform of the car one man was just ahead of her and Mr. Cole was right behind her; that there were gates at the platform, the one on the left side being closed, and that on the right side open, the engine being headed north; that the train appeared to be standing still, and the man ahead of her started to get off and fell; that she was so close behind him that, as she started to get off, she saw him fall, and saw the end of the car pass him, but then she was more off

the car than on it, so she could not get back, and laid hold of the rail of the car with her right hand, and was dragged in between the car and the platform and injured.

Physicians who attended her, one of them soon after the accident, testified to serious injuries. The plaintiff further testified that there was no trainman around there when she reached the car platform and attempted to get off the train; also, that when she attempted to get off, it appeared to her that the train was standing still; that she paid attention to that. She further testified that the night was dark; that there was no moonlight; that the light on the platform was very dim; that it was not light; that she noticed it was dark before she got off the train, and when she was on the car platform. On her cross-examination the following occurred :

Q. "Now was there anything that called your attention particularly, at that time, that the platform seemed dark ?" A. "Simply an impression."

Q. "How is that?" A. "Simply an impression."

Q. "Simply an impression was formed on your mind, as you started out of the car door, or was on the car platform, that the platform was dark ?" A. "Yes."

Q. "Did you have any occasion to observe it any more that evening, after you were injured ?" A. "No."

Q. "You didn't look to see if there were any lights there or not, did you ?" A. "I saw one; I noticed one."

It was admitted by defendant's attorney, in his opening statement to the jury, that a stop was made about 200 feet south of Randolph street.

The motion of defendant to instruct the jury, as stated, being in the nature of a demurrer to the evidence, it admitted not only all the evidence proved, but all it tended to prove. Frazer v. Howe, 106 Ill. 563–573.

The announcement of the trainman, after the train left Van Buren street, "Randolph street next stop," gave the passengers on the train to understand that the next time the train stopped, it would be at Randolph street. When, therefore, the train stopped short of Randolph street, it was natural, and a thing to be expected, that passengers bound for Randolph street should rise from their seats and

proceed to the platform of the car, and attempt to alight
from the car. Plaintiff's testimony is that after the car
stopped, she did not know that it again started, nor did
she know that it was moving until she saw the end of the
car pass the person just ahead of her, who fell in attempt-
ing to get off, and that she had then proceeded so far in
her attempt to alight from the car that she could not get
back.   She also testifies that after the announcement
"Randolph street next stop," there was no further an-
nouncement of any kind, and there were no trainmen
around when she attempted to get off. Whether, when
the train stopped short of Randolph street after the an-
nouncement, "Randolph street next stop," the defendant's
servants were, or not, guilty of negligence in not informing
passengers bound for Randolph street that the train had
not reached that street, is, as we think, a question of fact
which should have been left to the jury.  In the cross-
examination of the plaintiff, this occurred:

Q. "Now, you say the train made a stop?"  A.  "It
did."

Q.  "Between Van Buren?"   A.   "It did."

Q.  "You didn't get off, did you?"   A.   "Well, no, but
we thought the train had stopped, and didn't know it
started again."

Defendant's counsel relies on the evidence as being favor-
able to the defendant, saying in his argument:  "The point
in this case, however, is that she did not leave the train at
that stop."  Certainly not; but how does this help the
defendant?   The plaintiff's evidence shows that by the
prior announcement, "Randolph street next stop," and the
actual stop short of Randolph street, she was induced to
believe that the place at which the car stopped was Ran-
dolph street, and so attempted to get off, supposing the
train was still at the place where it stopped before reach-
ing Randolph street.  She says she did not then know that
it had started from that place.

We are also of opinion that the case should have been
left to the jury on the question whether the Randolph
street station was sufficiently lighted.  It was the night.

of December 1st, after eight o'clock in the evening, and the night was dark. Thompson on Carriers, p. 108; Buenemann v. Ry. Co., 32 Minn. 390; Patten v. Ry. Co., 32 Wis. 524, 531.

Counsel for defendant seems to be of the opinion that because plaintiff, on her cross-examination, stated that it was simply her impression that it was dark at the station, the case should not be submitted to the jury on the question whether the station platform was sufficiently lighted, and whether there was negligence in this regard. The witness having testified that it was dimly lighted and that it was dark, it was for the jury, and not the court, to consider all her evidence, comparing one part with another, and determine, on such consideration, what weight should be given to it. In Frazer v. Howe, *supra*, the court say: "It is not within the province of the judge, on such a motion, to weigh the evidence and ascertain where the preponderance is," etc. The same doctrine has been announced in other cases in this state, and applies, as we think, as well to apparently contradictory statements of a witness, as to contradictory or opposing statements by two or more witnesses. Besides, the statement that the station platform was but dimly lighted, is not necessarily inconsistent with her statement that such was her impression. If she saw it was dark or dimly lighted, her impression necessarily coincided with what she saw. Although, as the court say in Frazer v. Howe, *supra*, the practice of withdrawing evidence from the jury is looked upon with disfavor, it seems to have become almost a matter of course for counsel, at the close of the plaintiff's evidence, without regard to the character of the evidence, to move the court to take the case from the jury, which motion, if allowed in any of most of the cases which come before us, would inevitably cause a reversal. When a verdict is rendered in pursuance of a peremptory instruction of the trial court, and there is reasonable ground to doubt whether such instruction should have been given, we deem it our duty to reverse the judgment entered on such verdict.

Plaintiff testified that she was in Chicago several years before the accident, about three weeks, and at that time, rode frequently on the defendant's trains; that the cars then operated by the defendant were similar to those operated by it at the time of the accident, and that then, the gates of the cars were operated and were kept closed between stops. The court, on objection, struck out this evidence. The evidence we think relevant and competent on the question whether the plaintiff exercised ordinary care.

The judgment will be reversed and the cause remanded.