# CHARLES F. OFFUTT

## v.

## THE WORLD'S COLUMBIAN EXPOSITION.

*Opinion filed October 24, 1898.*

1. PRACTICE—*peremptory instruction is in the nature of a demurrer to the evidence.* An instruction to find for the defendant, on the ground that the evidence, with all reasonable inferences, is so insufficient that any verdict returned for the plaintiff must be set aside, is in the nature of a demurrer to the evidence, and, except as to technical methods of procedure, is governed by the same rules.

2. SAME—*one moving for peremptory instruction admits truth of opposing evidence.* One moving for an instruction to direct the jury to find in his favor admits the truth of all opposing evidence, and the question raised by such motion does not involve the determination of the weight of evidence nor the credibility of witnesses.

3. SAME—*"scintilla rule of evidence" is not in force in this State.* The term "evidence tending to prove," used in relation to peremptory instructions, means more than a mere scintilla of evidence, denoting evidence upon which a jury could, without acting unreasonably in the eye of the law, decide in favor of the party offering the same.

4. SAME—*court must not invade province of jury.* Where reasonable minds might reach different conclusions from the evidence offered, together with all justifiable inferences to be drawn therefrom, it is not the province of the court to take the case from the jury.

5. SAME—*credibility of witness not considered in determining propriety of peremptory instruction.* The fact that the plaintiff in a personal injury case had made a written statement while in the hospital, alleged to be at variance with his testimony at trial, raises the question of his credibility, and cannot be considered in determining the propriety of a motion to direct a verdict for the defendant.

6. FELLOW-SERVANTS—*existence of relation of fellow-servants is ordinarily a question of fact.* Where the plaintiff's evidence indicates that his injury was received while obeying the instructions of his foreman in a matter involving the latter's authority, the court has no power to grant the defendant's motion to direct a verdict upon the theory that the foreman and the plaintiff were acting as fellow-servants at the time of injury.

7. MASTER AND SERVANT—*liability of master ordering servant to perform dangerous work.* The master is liable for an injury received by a servant while obeying the master's orders to perform the work in a dangerous manner, unless the danger is so imminent that a man of ordinary prudence would not incur it.

8. SAME—*question whether danger is obviously great is for the jury.* The fact that the plaintiff, who was injured while obeying his foreman's orders to perform work in a dangerous way, testifies that he believed that way unsafe and objected to acting, does not warrant the court in deciding, as a matter of law, that the danger was so imminent that a prudent man would have refused to act.

*Offutt* v. *World's Columbian Exposition*, 73 Ill. App. 231, reversed.

WRIT OF ERROR to the Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. THOMAS G. WINDES, Judge, presiding.

HENRY D. BEAM, WILLIAM R. RUMMLER, and ROBERT W. McCULLOCH, for plaintiff in error.

JOHN A. POST, and JOHN B. BRADY, for defendant in error.

Mr. CHIEF JUSTICE CARTER delivered the opinion of the court:

This was an action on the case to recover damages for personal injuries sustained by plaintiff in error while in the employ of defendant in error.

At the close of the evidence for the plaintiff the court, upon the motion of the defendant, instructed the jury to find the defendant not guilty. The judge who sat in the trial having become one of the judges of the Appellate Court, and the other two judges being divided in opinion, the judgment was by that court affirmed, and the cause was then brought to this court on a writ of error sued out by the plaintiff. The only question in the case is, did the court err in instructing the jury to find the defendant not guilty?

An instruction to find against the party upon whom rests the burden of proof, on the ground that there is no evidence legally tending to prove his cause,—or, as it is now more generally stated, on the ground that the evidence, with all the inferences which the jury could justi-

175 472
198 7203
199 7187
102a 8355
102a 7436
175 472
200 7285
103a 4139
103a 4141
103a 4152
175 472
202 8151
202 7339
175 472
203 7504
206 2150
206 7205
106a 4139
106a 4266
107a 8 44
107a 7 77
107a 4561
175 472
207 8460
110a 601
175 472
210 4574
211 8227
175 472
113a 4224
114a 4243
175 472
215 4234

fiably draw from it, is so insufficient to support a verdict
for such party that such verdict, if returned, must for that
reason be set aside,—is in the nature of a demurrer to the
evidence, and, except as to technical methods of proce-
dure, is governed by the same rules.    The maker of the
motion to so instruct admits the truth of all opposing
evidence, and all inferences which may be fairly and ra-
tionally drawn from it.    The motion does not involve a
determination of the weight of the evidence nor the credi-
bility of witnesses. (*Bartelott* v. *International Bank*, 119 Ill.
259, and cases cited; *Phillips* v. *Dickerson*, 85 id. 11; *Chicago
and Northwestern Railway Co.* v. *Dunleavy*, 129 id. 132.)    It
has been said in some cases, that if there is any evidence,
however slight, tending to prove plaintiff's cause of ac-
tion, such an instruction would be erroneous, as it is the
province of the jury, and not of the court, to pass upon
the weight of the evidence, or its sufficiency in probative
force, to authorize a verdict.    In *Simmons* v. *Chicago and
Tomah Railroad Co.* 110 Ill. 340, in delivering the opinion
of the court, Mr. Chief Justice SHELDON said (p. 346):
"There may be decisions to be found which hold that if
there is any evidence—even a scintilla—tending to sup-
port the plaintiff's case it must be submitted to the jury.
But we think the more reasonable rule, which has now
come to be established by the better authority, is, that
when the evidence given at the trial, with all inferences
that the jury could justifiably draw from it, is so insuffi-
cient to support a verdict for the plaintiff that such a ver-
dict, if returned, must be set aside, the court is not bound
to submit the case to the jury, but may direct a verdict for
the defendant. (*Pleasants* v. *Fant*, 22 Wall. 120; *Randall* v.
*Baltimore and Ohio Railroad Co.* 109 U. S. 478; *Metropolitan
Railway Co.* v. *Jackson*, 3 App. Cas. 193; *Reed* v. *Inhabitants
of Deerfield*, 8 Allen, 524; *Skellenger* v. *Chicago and North-
western Railway Co.* 61 Iowa, 714; *Martin* v. *Chambers*, 84 Ill.
579; *Phillips* v. *Dickerson*, 85 id. 11.)    In the recent case of
*Frazer* v. *Howe*, 106 Ill. 563, this court recognized the rule

to be:   'If there is no evidence before the jury on a material issue in favor of a party holding the affirmative of that issue, on which the jury could, in the eye of the law, reasonably find in his favor, the court may exclude the evidence, or direct the jury to find against the party so holding the affirmative.'"   This language was quoted in *Bartelott* v. *International Bank, supra,* and Mr. Justice SCHOLFIELD, in speaking for the court, said (p. 272): "Since it was not intended in this case to overrule *Simmons* v. *Chicago and Tomah Railroad Co. supra,* it is apparent that 'evidence tending to prove' means more than a mere scintilla of evidence, but evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the plaintiff or the party producing it.   It is not intended by this practice that the function of the jury to pass upon questions of fact is to be invaded, any more than it is intended that such function is to be invaded by a motion to set aside a verdict and for a new trial upon the ground of the want of evidence to sustain the verdict.   In neither case is the court authorized to weigh the evidence and decide where the preponderance is."   See, also, *Siddall* v. *Jansen,* 168 Ill. 43, and *Rack* v. *Chicago City Railway Co.* 173 id. 289.

It is clear from the cases cited, and others, that what is called the "scintilla rule of evidence" is not in force in this State.

Much confusion has doubtless arisen from the different meanings attached to the phrase "tending to prove," but giving it the meaning as held by this court in the *Bartelott case,* above cited,—that it is "evidence upon which the jury could, without acting unreasonably in the eye of the law, decide in favor of the plaintiff or the party producing it,"—most of the apparent conflict between the different cases disappears.   Thus, it was said by Mr. Justice Maule in *Jewell* v. *Parr,* 13 Com. Bench, 909: "Applying the maxim *de minimis non curat lex,* when we say that there is no evidence to go to the jury we do not

mean that there is literally none, but that there is none which ought reasonably to satisfy the jury that the fact sought to be proved is established." It is, of course, true that there are cases where there is literally no evidence in support of some material and necessary allegation, but there are many others where there may be some evidence tending in some remote degree to support every allegation, yet of too inconclusive and unsubstantial a character to be the foundation of a verdict. In either of such cases the court may, when the question is properly raised, so determine, and direct a verdict as in cases where there is no evidence. A mere scintilla of evidence, if it means anything, means the least particle of evidence, —evidence which, without further evidence, is a mere trifle; and as the law does not regard trifles, we see no reason why, on such a motion, the court may not adjudge such evidence insufficient in law, and direct a verdict as in cases where there is no evidence. As well said in *Connor* v. *Giles*, 76 Me. 132, "there is no practical or logical difference between no evidence and evidence without legal weight." It is true that such motions are not to be regarded with favor. The province of the jury must not be invaded, (*Frazer* v. *Howe*, 106 Ill. 563,) and where reasonable minds, acting within the limitations prescribed by the rules of law, might reach different conclusions the evidence must be submitted to the jury. For a comprehensive review of this question see 6 Ency. of Pl. & Pr. 667, and 2 Thompson on Trials, 1595.

In the case at bar the evidence, in substance, was, that the plaintiff in error was a painter, who had worked at his trade for upwards of sixteen years; that he was a first-class workman, and thoroughly understood the hanging of ladders and the putting up of scaffolds; that he had been working in the World's Fair buildings for ten months before the accident occurred, on February 18, 1893. At that time he was employed by the defendant in the color department, working in the machinery hall.

annex.   Thomas Hunt had charge, for the defendant, of
that building and of all the men employed there in paint-
ing, and was foreman over the plaintiff.   Plaintiff was
ordered by Hunt to help put up a hanging stage or scaf-
fold close to the ceiling, about seventy feet above the
floor, near the west wall of the building.   After having
put up and fastened to a cross-beam the ropes to which
was to be hooked the pulley to support the east end of
the scaffold, he climbed up an upright beam on which
cleats had been nailed, to the rafter, and put a strap,
(or strop,) which is a piece of flat rope with the two ends
spliced together, forming a loop or link, around the raf-
ter, and put one end of the loop through the other end,
forming a noose around the rafter, and hooked the pul-
leys into the single loop, whereupon the foreman called
to him from below and directed him not to put it up that
way, but, with the double rope over the rafter, to place
both ends in the hook to the pulley, the object being to
put up a line, so that the whole arrangement, when the
work should be finished, could be jerked loose by stand-
ing on the floor.   Plaintiff objected, and told Hunt that
the hook was not big enough for that purpose, and that
the strap, being "brand-new," was "liable to come down."
Hunt replied that it would not come down, and repeated
his orders, and Offutt obeyed and fastened the strap as
directed.   Hunt and one Wagner, who had been working
with Offutt, then brought a stage or scaffold, and with
the pulleys pulled it up to plaintiff, who told them at the
time that it was too short for the place and was liable
to throw the loop out of the hook.   The foreman told him
it was all right, and to fasten it up.   The plaintiff then
fastened the west end and crept on his hands and knees
over the scaffold to the east end and fastened that end,
and while he was "crawling" back to the west end to come
down for orders, and when near the center, the stage
commenced to swing endways on account of its being too
short and the ropes fastening it at each end hanging at

an angle instead of straight down, and the strap or rope slipped out of the hook at the west end and plaintiff was precipitated to the floor below and was seriously and permanently injured. He testified that the way he first fastened the strap and hook was the proper, usual and customary way, and that it was safe, and that he thought that the way the foreman told him to do it was the wrong way. Wagner testified that sometimes a sling was used single and sometimes double; that it was often used double; that it was safer single, in his judgment, because the hook had a firmer grip on it; that it was not considered proper in the trade to have the loop double, but that straps had been put up with the hook into the double loop quite frequently there.

Counsel for defendant call our attention to a certain written statement alleged to have been signed by the plaintiff when he was under treatment in the hospital, and which it is said varies from the testimony given by him upon the trial. But that question relates only to the credibility of the witness and the weight which should have been given to his testimony by the jury had the issue been submitted to a jury, and does not arise in considering the alleged error of law in instructing the jury to find for the defendant.

It is also insisted that the evidence showed that if there was any negligence of the defendant it consisted in the negligence of the foreman, Hunt, when he was acting as a fellow-servant with the plaintiff in the same line of service. This is also a question of fact, with the evidence strongly tending to prove the contrary. The evidence tends to prove that Hunt was acting as foreman, representing the common master, and in that capacity gave specific orders to the plaintiff to perform the very act which caused the injury, and, as the case is presented here, we must of course so assume.

The next contention is, that it appears from the testimony given by plaintiff himself that he knew that it was

unsafe to place the double loop through the hook and to use the short stage or scaffold sent up to him, as he was ordered to do by the foreman, and that, having knowledge of the danger likely to result from his compliance with the foreman's demands, he should, acting prudently, have refused to obey, and that failing in this he was guilty of such contributory negligence as precludes recovery on his part. Under the evidence it cannot be assumed, as a matter of law, that the danger was so imminent that no man of ordinary prudence having knowledge of it would incur it. The rule is, that where the servant is injured while obeying the orders of his master to perform work in a dangerous manner the master is liable, unless the danger is so imminent that a man of ordinary prudence would not incur it. (*Illinois Steel Co.* v. *Schymanowski*, 162 Ill. 447, and cases cited; *Anderson Pressed Brick Co.* v. *Sobkowiak*, 148 id. 573; *West Chicago Street Railroad Co.* v. *Dwyer*, 162 id. 482.) Under the evidence in this record it would seem clear that it was a question of fact for the jury to determine whether the danger was of the character mentioned, and whether the plaintiff knowingly incurred it. The mere fact that he did not regard it as safe to fasten the hook over the double loop, and that the usual, customary and safer way was to attach the hook to the single loop with a noose over the beam or rafter, and that he regarded the stage or scaffold as too short, but performed the work as specifically directed by the master, was not, under all of the circumstances of this case, such proof as to authorize the court to say to the jury, as a legal proposition, that the evidence, with all justifiable inferences to be drawn from it, was insufficient to authorize recovery. There was evidence that loops were sometimes hooked in that way by those engaged in similar work. The servant was, under the evidence, acting under the specific directions of the representative of the master, and was required to attach the loop in a particular way for the convenience of the mas-

ter, so that the scaffold and ropes might be detached from their fastenings from below and the necessity of climbing up and unloosing them from the rafters avoided. The plaintiff was not required by law to disobey his master, or by obeying assume the hazard of obedience, unless the danger was so imminent that an ordinarily prudent man would not incur it. Besides, the plaintiff was not injured while using the scaffold as a place upon which to stand while engaged in painting, but was injured while in the act of adjusting it in obedience to orders and before he could leave it for a place of safety. It would be an unjustifiable inference to draw, as a legal conclusion, that the plaintiff knew or ought to have known that the danger was. so imminent that the scaffold would fall before he could leave it and climb down to the floor below. These are questions of fact which should have been submitted to the jury.

The judgment is reversed and the cause remanded to the circuit court.                        *Reversed and remanded.*