James Cowley, by his next friend, etc., v. Chicago & A. R. R. Co.

|  87 |  123 |
|-----|------|
|  93 | ¹479 |

1. VERDICTS—*Where the Court Will Direct for the Defendant.*— Where the evidence given at the trial, with all the inferences that the jury could justifiably draw from it, is so insufficient to support a verdict for the plaintiff that such a verdict, if returned, must be set aside, the court is not bound to submit the case, but may direct a verdict for the defendant.

2. PRACTICE—*On Motions to Exclude the Evidence.*—The rule that on a motion to exclude the evidence and direct a verdict the courts must not invade the province of the jury and pass upon the weight of the evidence, does not mean that if a single answer of a single witness standing by itself would make a case for plaintiff the court is thereby necessarily required to deny the motion.

Action in Case.—Appeal from the Circuit Court of La Salle County; the Hon. CHARLES BLANCHARD, Judge, presiding.   Heard in this court at the October term, 1899.   Affirmed.   Opinion filed February 1, 1900.

ELMER E. ROBERTS and McDOUGALL & CHAPMAN, attorneys for appellant.

DUNCAN & DOYLE, attorneys for appellee.

MR. JUSTICE DIBELL delivered the opinion of the court.

James Cowley, a child fifteen months old, had his right foot injured by an engine of the Chicago & Alton Railroad Company.   Two of the toes were removed by the medical attendant at that time, and two were removed a year later because of a muscular contraction rendering their amputation necessary.   He brought this suit, by his next friend, to recover damages for the injury.   Each count of the declaration charged that the engine was at the time passing along and through a certain alley.   The various counts charged that the injury was caused by the engine being driven and managed carelessly and improperly, at an unreasonable, rapid and unsafe rate of speed, and at a speed in excess of six miles per hour, limited by an ordinance of the city of Streator, within which the accident occurred, and that the

servants of defendant in charge of said engine violated their
duty in failing to keep a lookout to observe objects upon
the railroad track.   Defendant pleaded the general issue.
At the first trial plaintiff had a verdict, which the court set
aside.   Before the second trial defendant, by leave of court,
filed with its plea of general issue a notice of special mat-
ters intended to be relied upon as a defense at the trial, to
wit, that said railroad track, where plaintiff was injured, was
not situated upon a public alley, as alleged in the declara-
tion, but was wholly upon private property of the Acme
Coal Company, of which defendant and the Atchison, To-
peka & Santa Fe Railroad Company were sole licensees,
and that plaintiff at the time and place of the injury was
trespassing thereon.   On the second trial, at the close of
all the evidence, the court, on motion of the defendant, ex-
cluded the evidence and directed a verdict for defendant,
which was rendered and a judgment entered thereon.
Plaintiff sued out this writ of error.

First.   The allegation that at the place of the injury the
engine was passing along and through an alley was not sup-
ported by any proof, but the contrary was proved.   That
part of the city was divided into lots, blocks, streets and
alleys.   The alley passed through that block.   The Acme
Coal Company bought a strip of land fourteen feet wide off
the south end of the lots lying north of said alley in block
one of a certain subdivision, and on that strip of land laid
the railroad track in question, as a switch track to reach its
mines not far distant.   One of said lots was No. 10, about
the middle of the block.   Plaintiff's parents were tenants
living upon that lot.   There was a fence at the rear end of
the part of the lot they occupied, about three or four feet
from the nearest rail of the track, and in that fence an open
gateway without a gate.   There was no fence on the other
side of the fourteen foot strip next to the alley.   The rail-
road companies which had a license to pass over this track
were not bound to fence it, under section 1 of the statute
relating to fencing and operating railroads (T. W. & W.
Ry. Co. v. Spangler, 71 Ill. 568), nor was a neglect to fence

alleged in the declaration. Plaintiff was very sick that day, and was placed by his mother under a tree in the yard fifty feet or so from that fence, and evidently passed through the gateway and reached the engine just as it went by.

Second. There was no proof of the allegation of failure to keep a lookout. Plaintiff's mother came to the door when the engine was just rounding a curve after it had passed about two hundred feet beyond where the child was hurt. She saw the child was not in the yard, and saw what she thought was the child on the railroad track, and went to where the child was, a distance of fifty feet according to her testimony, and seventy-five feet according to her husband. After picking up the child and noticing its injuries she looked at the engine, still in sight, near the switch, and could not see any one around the engine, either on the side or front. This has no tendency to prove the servants of defendant, when they approached and passed the child, were not at their proper places within the engine cab, keeping a proper lookout. The engineer testified he was at his proper place on the engine, on the opposite side from this gateway, looking ahead, and did not see the child, and that the tender in front of him as he backed down, prevented his seeing beyond the opposite side of the rails for a distance of forty to seventy feet; and that buildings on the rear of the other lots prevented his seeing into the lot occupied by plaintiff's parents, as he approached it. The fireman testified he was at his place on the engine performing his duties as fireman. The only blood found was on the outside of the rail nearest the gateway, and no part of plaintiff was injured except his foot, so that he evidently had not been between the rails.

Third. There was no proof the engine was running at a high or dangerous speed, or that it was improperly or carelessly managed.

Fourth. An ordinance of the city of Streator restricted the speed of the engine to six miles per hour, and plaintiff's mother testified when she saw the engine on the curve after it had passed some two hundred feet beyond her child, it

was running ten miles per hour. She does not appear to
have had any experience in estimating the speed of engines
and trains. She walked fifty or seventy-five feet there-
after, picked up her child and examined its injuries, and
then looked again at the engine, and it was still near
enough for her to make out its number and see that there
was no one in front or on either side. When her direct and
cross-examination are each carefully considered we think
her estimate of its speed when she first saw it can have
but little weight. The engineer and fireman testified they
were running four or five miles per hour. It was shown
that the rails were in bad condition for running. As we
understand the evidence and plat, about 250 feet from where
the plaintiff was hurt, and about fifty feet from where
plaintiff's mother first saw the engine when she says it was
running ten miles per hour, the engine was required to stop
and did stop for the fireman to get off and arrange the
switch leading to the main track. An engine running ten
miles per hour travels 880 feet in each minute, or fifty feet
in less than four seconds. It is well nigh incredible that
the engineer would drive the engine at that speed when
within fifty feet of the place where he must stop, or that
he could have stopped at the main track, as the proof shows
he did, if he had been running at that speed when only
fifty feet away. The testimony of the engineer and fire-
man, accustomed to knowing the speed at which they are
traveling, is not only more likely to be correct, but is far
more reasonable. The only testimony on which a verdict
for plaintiff could have been based was this statement of
plaintiff's mother that the engine was running ten miles
per hour when she first looked at it, before she knew her
child had been hurt, and when she had no reason to suppose
she was interested in its speed; and this was practically
overcome by her further testimony showing that after she
had gone to her child and examined its injuries the engine
was but a short distance further away, as well as by the
facts as to the distance within which the engine was com-
pelled to stop, and also by the evidence of the engineer and
fireman. On this state of the testimony a verdict for the

plaintiff could not have been sustained.   The rule is that
"when the evidence given at the trial, with all inferences
that the jury could justifiably draw from it, is so insuffi-
cient to support a verdict for the plaintiff that such a ver-
dict, if returned, must be set aside, the court is not bound
to submit the case to the jury, but may direct a verdict for
the defendant."   (Offutt v. World's Columbian Exposition,
175 Ill. 472.)

The rule that on a motion to exclude the evidence and
direct a verdict the court must not invade the province
of the jury and pass upon the weight of the evidence
(Goldie v. Werner, 151 Ill. 551, Boyce v. Tallerman, 183 Ill.
115), does not mean that if a single answer of a single wit-
ness standing by itself would make a case for plaintiff, the
court is thereby necessarily required to deny the motion.
Such a motion is not to be granted unless there is a sub-
stantial failure of evidence tending to prove the plaintiff's
cause of action or to prove some fact material thereto.
But "evidence tending to prove the plaintiff's cause of
action" means "evidence upon which the jury could,
without acting unreasonably in the eye of the law, decide
in favor of the plaintiff."   (Offutt v. World's Columbian
Exposition, *supra*.)   We are of opinion the jury would have
acted unreasonably if they had found that the engine was
run at a speed which violated the ordinance, and that a
verdict for plaintiff must have been set aside.   The court
was specially justified in acting under this rule after there
had been one verdict for plaintiff which the court could not
sustain.

Fifth.   There was neither allegation nor proof that there
was anything about this railroad track, its ties or rails, to
appeal to childish instincts and curiosity and to attract to
it an infant fifteen months old, and holding out an implied
invitation to such a child, so as to require the railroad to
guard its track against infant children, and there is there-
fore nothing to bring this case within the rule laid down in
City of Pekin v. McMahon, 154 Ill. 141, and Siddall v.
Jansen, 168 Ill. 43, relied upon by appellant in argument.
Assuming that because of his extreme youth plaintiff was

not a trespasser upon the right of way, yet the defendant owed him no duty, at that place, upon private grounds, except to use all due diligence to prevent injury to him after he was discovered; and the proof is he was not seen at all by defendant's servants in charge of the engine. The judgment is affirmed.