## Illinois Steel Co. v. Joseph Wierzbicky.

1. EVIDENCE—*As to What the Plaintiff Testified to on a Former Trial, When Admissible.*—Where the defendant has brought out a part of what the plaintiff testified to on a former trial, it is proper to permit the plaintiff to bring out the rest of the conversation pertaining to the same subject.

2. INSTRUCTIONS—*Omitting the Elements of Plaintiff's Knowledge and Appreciation of the Danger.*—An instruction to the jury that even if they believe from the evidence that the rope used by the plaintiff, at the time of his injury, was raveled, split, frayed or untwisted, yet if they further believe from the evidence that such condition of said rope was open and apparent to the observation of the plaintiff, and that before the happening of the injury he had a reasonable opportunity to observe the same, and the danger, if any, caused thereby, and that plaintiff was not misled or deceived as to such danger, if any, by the defendant or by any one acting for the defendant, then the plaintiff can not recover for any injury that may have been occasioned merely by the rope being in such raveled or untwisted condition, is erroneous, because it omits the element of plaintiff's knowledge and appreciation of the danger.

3. SAME—*Omitting Element of Imminence of Danger*—An instruction to the jury that if they believe from the evidence that the plaintiff at the time he put the rope on the spool knew of the condition of the rope, and knew and appreciated the danger, *if any, incident to its use, then there can be no recovery in this case,* is erroneous, and is properly modified by striking out the words in italics and adding therefor "and further believe that the danger was so imminent that an ordinarily prudent man would not incur it, but would disobey the order, there can be no recovery."

4. SAME—*As to Care Which Master and Servant Owe Each Other.*—

An instruction that it is the law that the mere fact that the plaintiff in this case was at the time of the accident in the employ of the defendant, did not imply an obligation on the part of the defendant to take more than ordinary care for plaintiff's safety, that it was only bound to use ordinary care, and the plaintiff was also bound to use ordinary care for his own safety, and that the law required that both parties should use ordinary care, states clearly and correctly the duty, in respect to care, which the master and servant owe each other.

5. SAME—*As to Determining the Preponderance of the Evidence.*— An instruction that the preponderance of evidence in a case is not determined alone by the number of witnesses testifying to a particular fact or state of facts, that in determining upon which side the preponderance of the evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing and knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved on the trial, and from all these circumstances determine upon which side is the weight or preponderance of the evidence, is correct.

**Trespass on the Case,** for personal injuries. Appeal from the Superior Court of Cook County; the Hon. GEORGE W. PATTON, Judge presiding. Heard in this court at the March term, 1902. Affirmed. Opinion filed February 26, 1903.

**Statement.**—This is an appeal from a judgment for the sum of $8,000, rendered in favor of appellee and against appellant in an action on the case by the latter against the former. The declaration consists of four counts, but the court instructed the jury to find the defendant not guilty under the fourth count, which the jury did, and found the defendant guilty under the other counts. The declaration avers, in substance, that the plaintiff was employed by the defendant and was injured January 16, 1897; that a certain wagon or carriage loaded with iron or steel billets was moved into the mill, where plaintiff worked, by means of a rope, one end of which was attached to the carriage, and the other end wound around a revolving spool, and that the plaintiff, while handling the rope, caught his hand between the rope and the spool, and it was crushed and torn, by reason of which he had to suffer amputation of his hand and arm. It is also charged that the rope was unraveled,

untwisted and in strands at one place, and that defendant ordered plaintiff to use it. The rope was made of manila and was about one and one-half inch in diameter. The billets weighed from thirty to thirty-five pounds each, and the car when loaded weighed from three to five hundred pounds. The declaration avers ordinary care on the plaintiff's part, and negligence of the defendant in a formal manner, as is usual in such cases. The defendant pleaded the general issue.

The defendant was engaged in the manufacture of cotton ties. In the process of such manufacture billets of steel or iron (which, does not appear from the evidence) about one and one-quarter inch thick and about three feet long, had to be brought in a sort of car to the foot of an incline in the defendant's mill. This incline is ten or eleven feet in length; at the upper end of it there was a floor called a hotbed, which is two or three feet above the main floor of the mill, and it is necessary to move the cars loaded with billets up the incline to the upper floor. On the upper floor there is a cylinder from eight to ten inches in diameter, with flanges at each end, which is made to revolve by machinery operated by steam. The cylinder is called a spool. Its length is east and west, and when in motion it revolves toward the north. The incline is south of the spool. When it is desired to move up the incline a car which has stopped at the foot of it, a few turns with a rope are taken on the spool, which, when done, one end of the rope hangs on the north side of the spool and the other part of the rope, not yet coiled on the spool, extends from the upper surface of the spool south to the car, to which it is attached by a hook; a man then takes hold of that part hanging down on the north side of the spool and, facing north, pulls it south toward him, keeping it taut as the rope unwinds, and another man, standing behind the first one, coils the rope up as it comes off. At the time of the accident, January 16, 1897, the plaintiff was engaged in pulling the part of the rope which was being unwound from the revolving spool, as the part of the rope attached to the car was being wound

on the spool. His claim is, that in the part of the rope which was being wound onto the spool, there was a raveled, untwisted place, with loose strands hanging or projecting therefrom, and that, as such part passed him, his hand was caught by or in it, and was dragged onto the spool and under the rope which was being wound on the spool.

KEMPER K. KNAPP, attorney for appellant.

DAVID K. TONE and H. M. ASHTON, attorneys for appellee.

MR. JUSTICE ADAMS delivered the opinion of the court.

Appellant's counsel objects that the verdict is contrary to the evidence; that the court erred in its rulings on evidence and in the giving, refusing and modifying instructions.

The plaintiff testified that he had worked for the defendant about three and a half months; that during that time he worked piling the billets on the small car and pushing them into the mill two or three times a week. It appears from the evidence that the billets were loaded on the car outside the mill, and that the car, when loaded, was pushed by the men into the mill and along to the foot of the incline. Plaintiff further testified that, about two weeks prior to the accident, John Hannefin, defendant's foreman, showed him how to work the rope which was used to draw the car up the incline, and that, at the time in question, Hannefin said to him, "Joe, you go over and handle the rope and pull up the truck."

Plaintiff is a foreigner, and was called "Joe" at the mill. Hannefin denies that he so ordered the plaintiff, in his testimony. Plaintiff describes how the accident happened thus:

"I was pulling on the rope holding this truck, and I had to look out as this truck was coming up. There was a loose place on this rope that passed by, and when that got up on the spool, it stopped there and all this happened."

On cross-examination he testified:

"The rope was tight. I only saw it when it passed me, and when it got on the spool it turned round, and I was

caught. The broken place—torn place—passed me. The strands were unwound, and that formed sort of knots."

He further testified that the car had moved about half way up the incline when his hand was injured. Plaintiff further testified that prior to the accident he had not noticed the torn place in the rope; that he did not know it was dangerous to use the rope, and that he had not heard of any one being hurt in doing that work. He testified that he never saw any one but John Cassidy put the rope on the spool.

John Cassidy, witness for plaintiff, testified that he was supposed to put the rope on the spool, and that he put it on a good many times; that he put it on in the forenoon of the day when plaintiff was injured; that there was a ragged part somewhere in the middle of the rope, which he saw when the rope was turning on the spool, and that the ragged part stuck out " an inch and a half or so." This witness further testified :

" John Hannefin gave orders to the men there. I had a talk with Hannefin in reference to this rope before the accident. It might have been four or five days before Joe got hurt. I told John Hannefin that the rope was dangerous; that I came near getting caught, myself, on it. I don't exactly remember the answer he made."

This witness also testified :

" I knew a man by the name of Sweetwood. I saw him turn the rope. John Hannefin was present at the time. It might have been eight or nine days before Joe got hurt. He got caught in the rope, got his hand pulled in there, and Hannefin jumped up and stopped off the steam, and I took a billet in the shears, in order to stop. I had no talk with Hannefin that day. Sweetwood was putting the rope on this pulley, on this spool, when he got hurt. He had to put it on and hold it besides. I couldn't see how his hand was drawn in. His hand was on the spool, under the rope, when he was struggling to get out. When Sweetwood's hand was caught, the car was about half way up the incline."

John Hannefin, the foreman, called as a witness by the defendant, did not contradict Cassidy's testimony that he, Cassidy, told Hannefin that the rope was in a dangerous condition, or that Hannefin saw the Sweetwood accident.

Stony Zipp, a witness for plaintiff, testified that he heard of the accident; that, maybe two or three days before that time, he saw the rope, and that it was unwound and ragged.

Defendant called W. B. Farnsworth, defendant's clerk, who kept the time of the men, and he testified that Zipp quit working for defendant January 9, 1897, seven days before the accident. We think, however, the evidence clearly shows that appellee was working for appellant at the time of the accident.

The defendant examined a number of witnesses about the condition of the rope.

John Kee testified that he was about six feet from plaintiff when he was hurt; that he saw the rope on the spool; that he saw nothing the matter with it; that it was "all right." John A. Plum testified that on the day of the accident and before the accident, he had put the rope on the spool, and that, when he did so, the part of it which went around the spool was in good condition. John Dickson testified that when he heard of the accident he went and looked at the rope. He says:

"The rope must have been around the spool at that time. I did not discover any part of the rope unraveled or untwisted. The examination that I made at that time was just as one would go and glance at anything. Within a short time after I saw the rope again; within an hour afterward. There was no change made in the rope that day. The rope was used all the rest of the afternoon. When I saw the rope after the accident it was in good condition. So far as I noticed, it was not unraveled or untwisted, nor were ragged ends hanging down."

Bert Fickes saw nothing of the accident till after plaintiff's hand was caught on the spool. He testified:

"That part of the rope that was wrapped around the spool, when it was taken off, was good, as far as I saw."

Matthew Erickson testified that when he heard the "hollering," he ran to the rope; that he went within about ten feet of the spool, on which the rope still was; that he looked at that part of the rope which was attached to the car, and which was about ten feet from the spool, and it was in good condition.

Illinois Steel Co. v. Wierzbicky.

John Hannefin testified that he went to the place of the accident after plaintiff had been taken away on a stretcher; that he took the rope off the spool and took out the hand, which was in the rope at that time, and that the condition of that part of the rope which was around the spool was all right, not split or frayed, or anything like that.

The last witness, on cross-examination, testified that after the accident he quit working for defendant for a time, during which time he saw plaintiff at the hospital, and spoke to him thus: "I told him that I was no longer with the Illinois Steel Company, and that I would make a good witness for him."

We think the jury was warranted by the evidence in finding for the plaintiff and therefore can not say that the verdict is manifestly contrary to the weight of the evidence.

It is objected that the court erred in permitting the plaintiff to testify as to what he had testified to on a former trial of the cause; also, in refusing to permit proper cross-examination of the plaintiff. On cross-examination of plaintiff, defendant's counsel asked him certain questions, the apparent object of which was to show that on the former trial plaintiff testified that the only order given to him by the foreman was: "Go and load the cars and get the billets over here and unload them." On the redirect examination plaintiff was asked and answered as follows:

Q. "Tell this jury what you said on the former trial as to just what John Hannefin told you just before you got hurt." A. "When we got to the incline there, he then come and said, 'Joe, you go and turn the rope and pull up the truck.'"

There was no error in permitting this examination. It was proper in view of the cross-examination. Plaintiff could not speak the English language sufficiently to testify, and was examined through an interpreter. In such case it is much more difficult to make the witness understand questions than in ordinary cases.

On cross examination of the plaintiff he was asked why he didn't put the rope on the spool, and answered, "I never

was told by anybody," after which this question was asked : Q. "Were you ever told not to do it?" and the court sustained an objection to this question. While we think the question, on cross-examination, was not an improper one, its exclusion is not reversible error. Neither do we think that the defendant was, in the least, prejudiced by the ruling. Hannefin, defendant's witness, testified: "I told Joe to keep away from the spool. I was afraid he would get hurt, because he was so clumsy." This testimony was not contradicted.

Appellant's attorney asked the court to give the following instructions, marked, respectively, 1, 2 and 3 :

1. " The jury are instructed that even if they believe from the evidence that the rope used by the plaintiff, at the time of his injury, was raveled, split, frayed or untwisted, yet if they further believe from the evidence that such condition of said rope was open and apparent to the observation of the plaintiff, and that before the happening of the injury he had a reasonable opportunity to observe the same, and the danger, if any, caused thereby, and that plaintiff was not misled or deceived as to such danger, if any, by the defendant, or by any one acting for the defendant, then the plaintiff can not recover for any injury that may have been occasioned merely by the rope being in such raveled, split or frayed or untwisted condition."

2. " The jury are instructed that even if they believe from the evidence that the rope referred to in the evidence in this case was split, frayed, raveled or untwisted, and even if they believe from the evidence that the plaintiff was directed by John Hannefin to put said rope on the spool just before he was injured, yet the jury are further instructed that if they believe from the evidence that an ordinarily careful and prudent man, in the place of the plaintiff, would, under all the circumstances and conditions as shown by the evidence herein, at and before putting the rope on the spool, have known and appreciated the danger, if any, incident to the use of said rope, then there can be no recovery in this case."

3. " The jury are instructed that even if they believe from the evidence that the rope referred to in the evidence in this case was split, frayed, raveled or untwisted, and even if they believe from the evidence that the plaintiff was directed by John Hannefin to put said rope on the

spool just before he was injured, yet the jury are further instructed that if they believe from the evidence that the plaintiff at the time he put the rope on the spool knew of the condition of the rope, and knew and appreciated the danger, if any, incident to its use, then there can be no recovery in this case."

The court refused to give instructions 1 and 2, and also refused to give instruction 3 as asked, but modified the same by striking out all that part of the instruction next after the word "danger," and adding next after the word "danger." these words: "and further believe that the danger was so imminent that an ordinarily prudent man would not incur it, but would disobey the order, there can be no recovery."

Instruction 1 is erroneous, because it omits the elements of plaintiff's knowledge and appreciation of the danger. Instruction 2 is erroneous for the same reason, and also in assuming that the plaintiff put the rope on the spool. Instruction 3, as asked, was properly refused, and the modification of it by the court was proper. The instruction assumes that the evidence tends to prove that the plaintiff was directed by Hannefin to put the rope on the spool. In such case it would not be enough to prevent a recovery that plaintiff knew and appreciated the danger. To prevent a recovery, it would be necessary for the jury to believe and find, from the evidence, that the danger was so imminent that an ordinarily prudent man would not incur it. Offutt v. Columbian Exposition, 175 Ill. 472, 478–480.

It is contended that the court erred in refusing to give this instruction:

"The jury are instructed that it is the law, that the mere fact that the plaintiff in this case was at the time of the accident in the employ of the defendant, did not imply an obligation on the part of the defendant to take more care of the plaintiff than the plaintiff might reasonably be expected to take of himself."

The court, in lieu of the instruction asked, gave this instruction:

"The jury are instructed that it is the law, that the mere fact that the plaintiff in this case was at the time of

the accident in the employ of the defendant, did not imply an obligation on the part of the defendant to take more than ordinary care for plaintiff's safety; it was only bound to use ordinary care, and the plaintiff was also bound to use ordinary care for his own safety; the law required that both parties should use ordinary care."

The instruction given states clearly and correctly the duty, in respect to care, which each of the parties owed to the other, and is, as we think, a much better and fairer instruction than that asked by appellant's attorney. The action of the court in the matter was not error.

Appellant's counsel complains of the giving of the following instruction:

" The jury are instructed that the preponderance of evidence in a case is not alone determined by the number of witnesses testifying to a particular fact or state of facts. In determining upon which side the preponderance of the evidence is, the jury should take into consideration the opportunities of the several witnesses for seeing and knowing the things about which they testify, their conduct and demeanor while testifying, their interest or lack of interest, if any, in the result of the suit, the probability or improbability of the truth of their several statements, in view of all the other evidence, facts and circumstances proved on the trial, and from all these circumstances determine upon which side is the weight or preponderance of the evidence."

The instruction is correct, and has repeatedly been so held.   West Chicago St. R. R. Co. v. Lieserowitz, 99 Ill. App. 591; Sackett on Instructions to Juries, p. 38, Sec. 15.

We find no reversible error in the record, and the judgment will be affirmed.