Conklin Construction Co. v. Walsh.

---

## Conklin Construction Company v. L. C. Walsh.

### Gen. No. 13,091.

1. INSTRUCTIONS—*should be clear.* Instructions should be refused which are involved and argumentative and which do not inform the jury in plain, ordinary and understandable terms of the law with respect to which they are given.

2. CONTRIBUTORY NEGLIGENCE—*how question of, to be determined.* What constitutes negligence of any character, whoever may be affected from the fact of its existence, is a question to be predicated, not upon an assumption of certain facts culled from the evidence, but must be gathered from all the evidence *pro* and *con* supporting or not the contention of the presence of negligence sufficient under the law to charge a liability upon the defendant, or if such negligence is, under the proof, attributable to the plaintiff, then to relieve the defendant from the liability of its own negligence, if any is disclosed by the proof.

3. ASSUMED RISK—*when doctrine of, applies to servant doing work at command of master.* Where a servant undertakes to per-form work under conditions which he knows as well or better than his master to be dangerous, the fact that he is commanded to do such work does not relieve him from the operation of the doctrine of assumed risk.

Action in case for personal injuries. Error to the Circuit Court of Cook county; the Hon. RICHARD S. TUTHILL, Judge, presiding. Heard in this court at the October term, 1906. Reversed and re-manded. Opinion filed March 5, 1907.

The Inter State Independent Telephone & Tele-graph Company operated and maintained lines among other places in various parts of Illinois, and defendant was its construction contractor. At the time of the accident set out in the declaration telephone lines were being strung through the city of Aurora by de-fendant as such construction contractor.

Plaintiff in the month of May, being then 43 years of age, with twenty years' experience as a lineman in the stringing of telegraph and telephone wires, entered the employment of defendant as a lineman at Chicago, to string wires in the country, as he was informed and understood at the time of his employment. He weighed about 210 pounds at that time, and, he says, knew that the company was constructing and repairing telephone lines, and that he would be required to trim trees; that he was familiar with trimming trees and had trimmed trees for many years, and knew that it was a hazardous business; that limbs were liable to break and precipitate workmen to the ground, and that to get into a dangerous place one might fall to the ground.

On the day of the accident the regular foreman of the gang, in which plaintiff was, being in the hospital under an operation for appendicitis, another lineman named Shellhouse was performing the duties of the foreman and superintending the work on which plaint-iff was engaged. On June 5, 1901, plaintiff was at

work trimming a tree at Aurora. He said he was cutting the limbs and had already cut three or four, and had to break one little limb about as big as a man's finger, and had to reach up as high as he could to get the limb, hook it down a little bit and pull it with the other hand with a knife; that as soon as he broke the limb Shellhouse hollered, "Hell, there, don't break these limbs, go up higher." Plaintiff replied, "I do not like the looks of this limb." Shellhouse retorted, "Go, on," and going up to and standing under and looking up at the tree said, "Oh, hell, there, that is good enough, go on up." Shellhouse then said the limb was strong enough to go on and do the work. Plaintiff went up, cut two or three limbs, and then the limb of the tree on which he was resting his leg broke, and he fell to the ground, a distance of about twenty feet, and broke two of his ribs. He testified that he was afraid of the limb he stood upon, thought it was not strong enough to bear his weight, but at the urging and direction of Shellhouse he made the venture, with the result recited.

Suit was instituted against defendant and the Inter State Independent Telephone & Telegraph Company, but at the threshold of the trial, on motion of the plaintiff, the pleadings were amended by discontinuing as to the Inter State Independent Telephone & Telegraph Company, and the cause proceeded to trial before the court and a jury against the defendant, under an averment in the declaration of negligence in the foreman carelessly and negligently directing plaintiff to work in an insecure place in the tree, and in telling plaintiff that the limb on which he was directed to work was strong enough to bear his weight, and that there would be no danger of the limb breaking or his falling; averring, also, that the order given was one that he was obliged to obey. The declaration avers that plaintiff told the foreman that he had fears that the limb would not bear his weight if he went higher; that in obeying the order he relied upon the knowledge

of the foreman that the limb was strong enough to bear his weight.

The plea was not guilty. The verdict was in the sum of $2,000, upon which, after overruling a motion for a new trial, a judgment was entered, to which action of the court in overruling the motion for a new trial and in giving judgment upon the verdict, the defendant made and preserved appropriate objections and exceptions.

The record is before us for review upon a writ of error sued out of this court by defendant, and errors are assigned and argued which, after challenging the rulings of the court in the admission and exclusion of evidence and in the giving and refusal of certain instructions, present the contention that plaintiff and Shellhouse were fellow servants; that he assumed the obvious risks of his employment, out of one of which such risks the accident grew; and that plaintiff's own negligence was the proximate cause of the accident and its resulting injuries.

J. B. STEPHENS and JOHN A. RUSSELL, for plaintiff in error.

B. J. WELLMAN, for defendant in error.

Mr. JUSTICE HOLDOM delivered the opinion of the court.

An examination of the evidence in the record fails to disclose any material errors of the trial court in the admission or exclusion of evidence. While it is true that the usual duties of Shellhouse were the same as plaintiff's, that he was a "lineman" as also was plaintiff, yet it is uncontradicted that at the time of the accident Shellhouse was performing the duties usually discharged by the foreman, Seymour, who was temporarily incapacitated from working, he then being in a hospital suffering from an attack of appendicitis. The duties of Seymour were being performed by

Shellhouse, who, in Seymour's absence was, to all intents and purposes, the foreman directing the work being done by plaintiff at the time of the accident. This being so, it follows that the proffer of the testimony excluded was unavailing to rebut this apparent condition, even had it been admitted. While Shellhouse, when co-operating with plaintiff as a lineman was a fellow servant, cannot be gainsaid, he was plainly, as to plaintiff, when directing plaintiff's work as foreman, a vice-principal.

We think the first instruction given at the instance of plaintiff is clearly open to the attack made upon it by defendant, that it is so involved, argumentative and misleading in its rhetorical construction as to confuse and mislead a jury of ordinary men. It failed to inform the jury in plain, ordinary, understandable terms as to the qualifying duty of plaintiff on the occasion in question, in the hazardous position in which he was placed. On this point it was essential that the instruction should have been clear and made understandable by the use of unequivocal and uninvolved language. This instruction reads in part: "Nor was he, plaintiff, guilty of contributory negligence in obeying said order, unless you further find from the evidence that the extra hazard or danger, if any, was so great that a reasonably careful person, under like circumstances and like surroundings, would have refused to obey the order or would not have attempted to do so *without taking a further known to the plaintiff and ordinary precaution to avoid injury under the circumstances in evidence.*" This is disjointed, ambiguous and not readily understandable except from a somewhat careful and critical analysis of the whole sentence. The instruction was the most important of the series given, and embodied essential elements to the understanding of which, in all its bearings upon the rights of the parties, depended the correct determination of the liability of defendant and the right of plaintiff to maintain his action. The instruction assumes that cer-

tain facts therein recited did not constitute contributory negligence on the part of plaintiff. What constitutes negligence of any character, whoever may be affected from the fact of its existence, is a question to be predicated, not upon an assumption of certain facts culled from the evidence, but must be gathered from all the evidence in the case *pro* and *con* supporting or not the contention of the presence of negligence sufficient under the law to charge a liability upon the defendant, or if such negligence is, under the proof, attributable to the plaintiff, then to relieve the defendant from the liability of its own negligence, if any is disclosed by the proof. Such is the trend of the law in this jurisdiction. West Chi. St. Ry. v. Winters, 107 Ill. App. 221.

It is not the province of the court to tell the jury that certain facts constitute negligence. Pennsylvania Co. v. McCaffrey, 173 Ill. 169. Telling the jury that "plaintiff was not guilty of contributory negligence in obeying said order" is a conclusion of negligence resting upon facts in proof. It is violative of the province of the jury for the court so to do, and is reversible error. For a full citation of supporting authority on this proposition, see Chicago City Ry. Co. v. Lavinder, Gen. No. 13041, opinion by Mr. Justice Adams, filed in this court February 18, 1907, not to be reported.

We are inclined to the opinion that the question of liability under the proof is not at all free from doubt. Whether or not the plaintiff was in the exercise of reasonable care for his own safety in going upon the branch of the tree which yielded to his great weight and precipitated him to the ground, in the uncertain condition of his mind as to its being a place of safety or danger, and whether from these expressed doubts of plaintiff the danger may not be said to have been so obvious to him that a prudent man, in the exercise of due care for his own safety, would not have ven-

tured into the place of danger, being close questions of fact under the proof, made it peculiarly essential to a fair trial that the jury should be correctly, clearly and understandingly instructed upon the law to be applied by them to the facts. This the instruction complained of failed to do, and none other in the series cured the infirmity.

Offutt v. World's Columbian Ex., 175 Ill. 472, plaintiff insists, is decisive of his right to recover in this action. The rule there established is "that where the servant is injured while obeying the order of his master to perform work in a dangerous manner, the master is liable unless the danger is so imminent that a man of ordinary prudence would not incur it." This is unquestionably the law. In the application of it, recourse must be had to the facts of each particular case, in order to ascertain whether there is any such departure disclosed by such facts as to distinguish the rule and render it inapplicable. In the Offutt case the plaintiff was a painter. He protested that his way of securing the staging on which he was to work was the proper and safe method; his master determined otherwise, and ordered the fastenings upon the stage to be made in a different way. The plaintiff pointed out the danger of the method, but, while protesting, yet proceeded to obey the master's command. What he anticipated occurred. He was clearly within the rule. In the case at bar, Walsh was up the tree of his own volition and without any particular instruction. Shellhouse, the acting foreman, had not been up the tree, and the place which proved unsafe for Walsh's 210 pounds of humanity was 20 feet from the ground, where the foreman was standing and to which Walsh tumbled. Walsh's opportunity was superior to that of the foreman. He was dealing with a natural condition, not an artificial one, as Offutt was. Walsh's experience in tree-climbing and trimming was extensive, covering a period of twenty years. The question for him was

whether a prudent man carrying 210 pounds was in imminent danger in placing his weight into the crotch of the limb five feet higher than the place he was then safely occupying, when ordered by his foreman to ascend to the place of danger. It was for the jury to determine from all the evidence whether the danger was so imminent that no man of ordinary prudence, and his weight, having knowledge of it, would incur it. The staging from which Offutt fell was made and intended for use by painters. The tree out of which Walsh fell, he testified, was a "box elder" 15 inches in diameter two feet from the ground. From the photograph in evidence this "box elder" does not appear to have been a very sturdy tree, and not of such strength as would seemingly inspire the confidence of an ordinarily prudent man that one weighing 210 pounds might in safety work among its branches 20 feet above the ground. Trees ordinarily are not used in their upper branches for supporting 210-pound men, and while they may in certain conditions be said to hold out a temptation for small boys to climb, at the risk of their limbs, yet their primary, normal use is a nestling place for the birds of the air. These conditions are pertinent upon the question of due care and assumption of risk by plaintiff, and involve also the question of whether or not he was guilty of contributory negligence as a proximate cause of his injuries. They are pertinent to be taken into consideration by the jury on another trial, under correct instructions upon the law, in determining whether or not plaintiff is entitled to recover from the defendant compensation for such injuries.

For the error in giving the instruction held faulty in this opinion, the judgment of the Circuit Court is reversed and the cause remanded for a new trial.

*Reversed and remanded.*